572 F.2d 710
 97 L.R.R.M. (BNA) 3040, 83 Lab.Cas. P 10,415
 Leroy FOUST, Plaintiff-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, D. F.
Jones, District Chairman, in his representative capacity,
Leo Wisniski, General Chairman, in his representative
capacity, and Frank T. Gladney, International Vice
President, in his representative capacity, Defendants-Appellants.
 No. 76-1951.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Jan. 23, 1978.
Decided March 6, 1978.
 
 Terry W. Mackey of Urbigkit, Mackey, Whitehead & Sullivan, P. C., Cheyenne, Wyo., for plaintiff-appellee.
 William J. Hickey, Washington, D. C. (Edward J. Hickey, Jr., Washington, D. C., and Mulholland, Hickey & Lyman, Washington, D. C., of counsel, on the brief), for defendants-appellants.
 Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 The International Brotherhood of Electrical Workers, defendant-appellant herein, seeks reversal of a judgment of the United States District Court for the District of Wyoming, which was based on a jury verdict holding the Brotherhood liable for breach of duty to fairly represent plaintiff-appellee Leroy Foust in grievance proceedings addressed to the Union Pacific Railroad and ultimately to the Railway Adjustment Board. The judgment of the district court was in favor of Foust and included an award of $40,000 actual damages and $75,000 punitive damages. The crucial question on this appeal is whether the evidence supports the judgment based upon breach on the part of the Brotherhood of a duty owed to Foust, a member of the Union.
 
 
 2
 Foust was a radioman, who had been employed by Union Pacific Railroad and had been a member of the International Brotherhood of Electrical Workers, which organization was his collective bargaining representative while he was employed by the railroad. The individual defendants herein are the officers of the Union. The injury to Foust occurred on March 9, 1970, while he was on the job. He had a claim against the railroad under the Federal Employer's Liability Act, which claim was settled on September 25, 1973. The settlement provided for payment of $75,000 to Foust less $2,600 in sickness benefits. He waived future right of employment and any claim that he might have had for alleged wrongful discharge against the railroad.
 
 
 3
 His second claim was that which had arisen as a result of the railroad company terminating his employment. A release was given with respect to this when he received the $75,000 settlement.
 
 
 4
 The claim in the instant case is against the Union and is based on its alleged failure to represent him fairly in the proceedings having to do with his grievance which grew out of the termination of his employment by the Union Pacific Railroad Company.
 
 
 5
 Our main concern is, therefore, whether the proof at trial was legally sufficient to establish a claim that the Union violated a legal duty to represent him, supported by sufficient evidence.
 
 
 6
 After his injury on March 9, 1970, Foust went on leave of absence from his job in order to obtain medical treatment for his injured back.
 
 
 7
 The rules in the Collective Bargaining Agreement provided for an employee to file a request for a leave of absence for a limited period of time with rights of renewal on request. Based upon Rule 23(b) of the Collective Bargaining Agreement, he must apply for leave of absence at the peril of being terminated. The Agreement provides:
 
 
 8
 Failure to report for duty at the expiration of leave of absence shall terminate an employe's service and seniority, unless he presents a reasonable excuse for such failure not later than seven days after expiration of leave of absence.
 
 
 9
 On January 12, 1971, Union Pacific advised Foust by letter that his current leave of absence had expired December 22, 1970; that they had not heard from him; and that it was necessary that a proper request for an extension accompanied by a statement from his doctor be furnished. On January 21, 1971, Foust's then attorney informed the railroad that Foust had filed a request for extension in December and asked whether it had been received and, if not, what forms were needed.
 
 
 10
 The railroad responded on January 25, 1971, advising the attorney that it still did not have a physician's statement and that when one was received Foust's request for leave would be considered. However, on February 3, the railroad wrote to Foust and advised him that he was being terminated for failure to request an extension prior to expiration of his leave and for failure to furnish a statement from his doctor as to the necessity for additional leave.
 
 
 11
 Foust's attorney contacted the railroad in an attempt to get the decision to discharge Foust reversed. On March 26, 51 days after the date of discharge, he wrote to one Dean Jones, District Chairman of the Brotherhood.[1] This letter was received Saturday, March 27. Thereupon, Jones contacted the General Chairman of the Systems Council in Omaha, Leo Wisniski. Wisniski prepared a letter which was sent first to Jones in Omaha, and then sent to Foust with Jones' signature. This was dated April 5. It acknowledged receipt of the letter from Foust's lawyer. It explained that Rule 21 of the Collective Bargaining Agreement required a grievance to be presented in writing by or on behalf of the employee involved. The necessity to receive a written authority to handle claims or grievances on behalf of an employee was explained. The letter went on to say that: " . . . Upon receipt of your grievance in writing, and request to the undersigned to handle your initial claim pertaining to the Carrier terminating your service, it will be reviewed and handled under the proper grievance procedures . . ."
 
 
 12
 Jones filed a claim on Foust's behalf, but did not do so before April 6, which was two days after the deadline. The claim letter was prepared by Wisniski in Omaha and was mailed to Jones in Rawlins, Wyoming, and then sent by Jones to the railroad officer in Omaha. It is not surprising that this claim was denied because of its not having been timely filed. The Union appealed this decision, but it was finally denied by the Railway Board of Adjustment as having been filed two days late.
 
 
 13
 The issues which are advanced on behalf of the International Brotherhood, defendant-appellant, as a basis for reversal include:
 
 
 14
 1. The alleged error of the trial court in upholding a verdict, the effect of which was to hold the Brotherhood liable for breach of a duty owed to Foust to represent him.
 
 
 15
 2. The alleged error of the court in failing to set aside the jury verdict granting, first, compensatory damages in the amount of $40,000, and, secondly, punitive damages in the amount of $75,000.
 
 
 16
 3. The alleged error of the court in allowing the case to be tried by a jury and in its having failed to grant a motion for directed verdict.
 
 
 17
 4. The error of the court in failing to dismiss the case because of the neglect of Foust to pursue and exhaust his administrative remedies.
 
 I.
 
 18
 DID THE TRIAL COURT ERR IN ITS FORMULATION AND SUBMISSION TO
 
 
 19
 THE JURY OF THE STANDARDS WHICH IT DEEMED APPLICABLE?
 
 
 20
 The court in its charge to the jury explained the plaintiff's theory of recovery as having arisen from his wrongful discharge on February 3, 1971, by the Union Pacific Railroad for having failed to file for a continued leave of absence. The court explained that under Rule 21 of the Collective Bargaining Agreement between the Union and the Union Pacific Railroad Company, a notice of grievance was required to be filed within 60 days of the date that the grievance occurred, the grievance here being the alleged unlawful discharge. Plaintiff's contention was explained as the Union's failure to file the grievance within the 60-day period, notwithstanding his request within the 60-day period and resulting in denial by the Board of Adjustment (which functions under the Railway Labor Act). The court further said that the allegation of plaintiff was that the Union was guilty of gross nonfeasance and hostile discrimination in arbitrarily and capriciously refusing to process the plaintiff's grievance and in refusing to file it timely.
 
 
 21
 The issues for the jury to determine were, first, whether the defendant Union was obliged to represent the plaintiff at grievance procedures with the Union Pacific; second, whether failure to represent breached a duty owed the plaintiff to represent him fairly in grievance procedures; third, whether the Union was guilty of gross nonfeasance, hostile discrimination and arbitrary and capricious failure to process the grievance and, finally, whether plaintiff was damaged by this failure.
 
 
 22
 The jury was also told that it must ignore the wrongful discharge by the Union Pacific Company as a source of damage; that a claim against the Brotherhood for breach of a duty of fair representation was a separate and distinct claim from his wrongful discharge at the hands of Union Pacific.
 
 
 23
 Emphasis was placed on the need for the jury to find, in order for the plaintiff to recover, that the action of the Union caused damage to him independent of any action which the Union Pacific may have taken. The jury was told that the essential legal standard which the evidence had to satisfy was arbitrariness and capriciousness of the Union; that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory manner. Arbitrary and capricious were said to be synonymous and were defined as an act done without adequate principle or an act not done according to reason and judgment. Arbitrary and capricious were defined as requiring judgment on the basis of whether the act complained of is reasonable or unreasonable under the circumstances. Bad faith was described as implying a breach of faith.
 
 
 24
 It would seem that the source of the Union's obligation to represent the member of the Union arises under the Railway Labor Act, 45 U.S.C. § 151 et seq., plus the Collective Bargaining Agreement between the Union and the Union Pacific. Sections (1) and (3)(c) of Rule 21 recognize the right of representatives of organizations to file and prosecute claims and grievances for and on behalf of the employee they represent. From the fact that the Union is exclusive bargaining representative under the Railway Labor Act, and from the recognition further of the union in the Collective Bargaining Agreement, the case law as to the duty of the unions to fairly represent the employees has emerged.
 
 
 25
 The Supreme Court considered the scope of the duty in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). There a worker challenged the union's decision not to appeal his grievance to arbitration. The Supreme Court held that there was no breach of duty by the union in thus exercising its discretion; that it had the right to make an evaluation of the merits of the grievance and to make a decision as to whether it was worthy of an appeal. But, at the same time, the Court fully recognized that the union could have violated its duty to the claimant had it ignored the worker's complaint or if it had processed the grievance in a perfunctory manner.
 
 
 26
 In giving its charge the trial court adhered to the decision and language of Vaca.
 
 
 27
 The Union seeks recognition of a more narrow standard that was enunciated by the Supreme Court in Amalgamated Ass'n of Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). The Court in that case spoke of the necessity for showing evidence of fraud, deceitful action or dishonest conduct. See 403 U.S. at 299, 91 S.Ct. 1909. It also said that there must be evidence of discrimination which is intentional, severe and unrelated to legitimate union objectives. See 403 U.S. at 301, 91 S.Ct. 1909.
 
 
 28
 Subsequently, in Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), the Supreme Court quoted with approval its prior discussion contained in Vaca. In Hines, the plaintiffs had been discharged for dishonesty and subsequently discovered evidence that showed they had probably been innocent. The allegation by them was that the union had failed to adequately investigate the charges and had presented no favorable evidence at arbitration. The Court cited Vaca, stating that the union cannot ignore a meritorious grievance or process it in a perfunctory manner. It ruled that the allegation contained in Hines stated a claim for breach of duty of fair representation, noting, however, that "arbitrary" conduct calls for more than "mere errors in judgment." 424 U.S. at 571, 96 S.Ct. 1048.
 
 
 29
 In Reid v. International U., U.A.W., 479 F.2d 517 (10th Cir. 1973), cert. denied, 414 U.S. 1076, 94 S.Ct. 572, 38 L.Ed.2d 483 (1973), this court cited the language contained in both Vaca and Lockridge. In Woods v. North American Rockwell Corp., 480 F.2d 644 (10th Cir. 1973), we stated that the duty included an "obligation to avoid arbitrary conduct."
 
 
 30
 In the case at bar the violation of duty relied upon was the failure of the Union to act within the time provided in the Collective Bargaining Agreement. True, the time available to the Union was limited. This, however, does not excuse their having needless correspondence back and forth and insisting that they have an authorization from the plaintiff with respect to representation by the attorney who is seeking to get them to act.
 
 
 31
 We are of the opinion that the court's charge to the jury constituted a correct selection of standards and a proper statement of the applicable law as to the duty of fair representation.
 
 II.
 
 32
 WAS THE EVIDENCE LEGALLY SUFFICIENT AND DID IT SUPPORT THE STANDARDS?
 
 
 33
 The grievance was filed out of time, and it was because of this that the Board denied it. In Ruzicka v. General Motors Corp., 523 F.2d 306(6th Cir. 1975), evidence that the union inexplicably, without making a determination as to its merits allowed the deadline for taking the case to arbitration to lapse, was sufficient to support a verdict of breach of duty. In Griffin v. International U., U.A.W., 469 F.2d 181 (4th Cir. 1972), the court stated that a union could not refuse to process a grievance without reasons. The First Circuit in De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281 (1st Cir.), cert. denied, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970), held that the failure to investigate the merits of a grievance could be arbitrary conduct and a breach of a duty. In accord is Hughes v. International Bro. of Teamsters, Local 683, 554 F.2d 365 (9th Cir. 1977).
 
 
 34
 In our opinion the evidence adduced as to the perfunctory manner of handling the claim was sufficient justification for the submission of the issue of breach of duty to the jury. The Union filed the grievance out of time and it was due to this that the Board denied it. The evidence, in addition to that just mentioned, showed that there had been an earlier effort on the part of Foust to file a claim for wages while he was attending physical therapy sessions. The Union apparently believed that this was cognizable under the Federal Employees' Liability Act, but made little effort to clarify the matter. This serves to give character to the subsequent failure of the Union to pursue the claim in question despite the fact that it had full knowledge of the 60-day limit. At no time did Jones or Wisniski seek to contact Foust by telephone. Instead, despite the shortness of time, they insisted that Foust personally submit the claim to them. This message was contained in a letter prepared in Omaha, mailed to Rawlins and then mailed to Foust the day after the time for submitting a claim had passed. None of this was necessary. Ordinarily Jones would have been the person to handle a grievance, but Wisniski became a part of the machinery that was used and this delayed the ultimate filing. The jury could consider this as arbitrary, unreasonable and a breach of duty.
 
 III.
 
 35
 DID THE TRIAL COURT ERR IN REFUSING TO DISMISS THE FOUST
 
 
 36
 COMPLAINT BECAUSE OF FAILURE TO EXHAUST INTERNAL
 
 
 37
 UNION REMEDIES?
 
 
 38
 This contention rests on Article XXVII, Section 12 of the Union's Constitution, which reads:
 
 
 39
 Sec. 12. Any member who claims an injustice has been done him by any L.U. (local union) or trial board, or by any Railroad Council, may appeal to the I.V.P. any time within forty-five (45) days after the date of the action complained of. If the appeal is from an action of a railroad local union, or a Railroad Council, it must go to the I.V.P. in charge of railroad matters.
 
 
 40
 The complaint is that no charge was filed by Foust with the International Vice President of the Union. The Constitution is not before us.
 
 
 41
 The case of Imel v. Zohn Mfg. Co., 481 F.2d 181 (10th Cir. 1973), recognized that exhaustion of intra-union remedies is ordinarily required. There the local had refused to process plaintiff's grievance. The Constitution specifically provided for an expedited appeal and required that this be followed before a member was free to sue the union. We there said:
 
 
 42
 The by-passing of the carefully enunciated review measures, absent a clear and positive showing of futility, can only promote disharmony in the field of labor-management relations. 481 F.2d at 184.
 
 
 43
 The cases hold that a prerequisite to the type of suit which is before us is that there be at least some effort to avail oneself of internal remedies. See, e. g., Harrison v. Chrysler Corp., 558 F.2d 1273 (7th Cir. 1977); Ruzicka v. General Motors Corp., 523 F.2d 306 (6th Cir. 1975); Mills v. Long I. R. Co., 515 F.2d 181 (2d Cir. 1975).
 
 
 44
 The Supreme Court held in Glover v. St. Louis-S.F. Ry. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), that a minority member who claimed racial discrimination was excused from the exhaustion requirement based on futility, where the evidence was insufficient that the internal remedies would prove adequate. See Retana v. Apt., Motel, Hotel & El. Op. U., 453 F.2d 1018 (9th Cir. 1972). The worker there was unable to speak English and had repeatedly sought union help without result. Perhaps this is another way of arriving at the conclusion that it would be futile. There are other cases that hold that a showing of futility or inadequacy or likelihood of bias will excuse failure to exhaust. See Calagaz v. Calhoon, 309 F.2d 248, 259-60 (5th Cir. 1962); Patterson v. Bialystoker & Bikur Cholim, Inc., 81 C.C.H. Lab.Cas. P 13,251 (S.D.N.Y.1977); Cefalo v. International U. of Dist. 50, U.M.W., 311 F.Supp. 946, 953 (D.D.C.1970).
 
 
 45
 There is no evidence from which we could conclude that the appeal to the International Vice President in charge of railroad matters would have been availing. Finally, considering that the present suit is for damages and not for reversal of a decision of a Union officer and has been tried and appealed, it would be a strange result to now say that it is defective because of failure to first appeal to the Vice President.
 
 
 46
 Judging from the nature and character of this claim, there seems little likelihood that the Union would have acted in an effort to compensate Foust for the failure. Moreover, the Union did little to bring this question to the attention of the trial court. For these reasons, it does not loom large as a defense to a verdict following a complete trial.
 
 
 47
 In reaching this conclusion, we are not denying the policy which favors making every effort to obtain a settlement of intra-union disputes.
 
 IV.
 
 48
 DOES THE FACT THAT THE UNION WAS NOT THE SOLE AGENCY FOR
 
 
 49
 PRESENTING GRIEVANCES ALTER THE EXISTENCE OF ITS DUTY?
 
 
 50
 The Union argues that since Foust had the right under the Railway Labor Act and the Collective Bargaining Agreement to file the grievance himself, this undermines the existence of a duty on the part of the Union to initiate the grievance. However, Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), held that this fact did not excuse the union's racial discrimination in refusing to represent employees. The Supreme Court reasoned that the bargaining power of the union was much greater than that of an individual or a small group.
 
 
 51
 Some courts have not allowed the union to make the employee's right to assert his own grievance a defense where the employee has committed his grievance to the hands of the union and has relied on the union effort. See Harrison v. United Transport U., 530 F.2d 558 (4th Cir.), cert. denied,425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976); Schum v. South Buffalo Ry. Co., 496 F.2d 328 (2d Cir. 1974); Browning v. General Motors Corp., Fisher Body Div., 387 F.Supp. 985 (S.D.Ohio 1974). Having undertaken to act affirmatively on behalf of Foust, the Union is precluded from escaping responsibility by asserting that Foust could or should have presented the grievance rather than depend on it.
 
 V.
 
 52
 DID THE COURT CORRECTLY INSTRUCT THE JURY ON THE QUESTION OF
 
 
 53
 CAUSATION?
 
 
 54
 The court first told the jury that it was "to ignore any evidence relating to whether or not the plaintiff was wrongfully discharged from employment by the Union Pacific Railroad Company. The defendant Union and its representatives did not participate in any aspect of that decision and there is no charge in the Complaint involving the Union in regard to whether or not the Plaintiff had or had not observed the rules of the carrier which were stated as a basis for the termination of his employment by the railroad."
 
 
 55
 There is a dictum in Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), which says that in an action against the employer and the union jointly wrongful discharge is an ingredient of the action. The case at bar was tried on the theory that wrongful discharge was not a necessary element. The union itself consented to the court's instruction that the wrongful discharge suit and the fair representation action were distinct and separate, one against the railroad and one against the Union. Bearing in mind that this was not an action against both employer and Union, we view the trial court's instruction as to the separateness of the claims to be valid. From a further instruction of the trial court this is very clear:
 
 
 56
 You are also instructed that a claim by a former Union member against a Union for breach of its duty of fair representation is a separate and distinct claim which the member has and is apart from any right which the employee may have or may have had against his employer. Thus, if you find from a preponderance of the evidence that the actions of the Union have caused damage to the Plaintiff independent of any actions which the employer may have taken, you may award such damages as the evidence shows the Plaintiff incurred.
 
 
 57
 The court was saying that in a suit against the employer the essence of it would be wrongful discharge. Here, as to the Union, the court told the jury that there must have been an injury independent of any action on the part of the employer.
 
 
 58
 It is conceivable that wrongful discharge could be looked to in a fair representation suit against the Union alone. Where this is true an inference of wrongful discharge could be drawn from the circumstances surrounding the termination and the fact that he was terminated with loss of not only his job but his incidental rights, merely because he failed to specifically apply for an extension of his leave of absence. However, we need not and we do not reach this issue. We consider the trial court's instruction on this to be appropriate considering the manner of trying and defending the cause.
 
 VI.
 
 59
 WAS THE INSTRUCTION ON THE MEASURE OF DAMAGE PROPER?
 
 
 60
 The claim for compensatory damage was $75,000 for lost wages and benefits from the date of discharge to September 1973, and the court instructed the jury that the measure of damage to be considered included all of the salary and wages, overtime pay, vacation pay, insurance, seniority and fringe benefits which the plaintiff would have received during the period he would have been working for the railroad company. The verdict was $40,000 and it is contended that this was excessive; that conceding that it would be liable for lost wages, etc. if there were proof of such damages, there was not sufficient evidence. There was no objection by the Union to the instruction given on the measure of damage.
 
 
 61
 About the only tangible evidence in the record is for lost wages, which would be based on his continuing to have his old job. Although he testified as to loss of seniority together with insurance and other fringe benefits, there was a lack of evidence as to the reasonable value of these items. He did testify as to loss of $1,000 for medical costs resulting from lost insurance. It is argued that he should not have damages based upon his pay at the old job because he would not have been performing it due to his injury. He had a disability which prevented him from performing his job as a radioman. No doubt he was unable to testify as to the wages he would receive had he retained his status and been given another job. The only standard that he had to offer was his pay that he had been receiving. Undoubtedly his loss of fringe benefits was worth something, but from the record we are not able to say what their worth was. Nor can we say that the jury's conclusion was wrong.1a
 
 
 62
 As to his having settled with the railroad for the injury under F.E.L.A., we do not view this as precluding a recovery for breach of duty of fair representation against another party.
 
 
 63
 The next point advanced by the Union is that the trial court erred in instructing the jury that they could award punitive damages in order to punish the wrongdoer for some extraordinary misconduct in order to serve as an example to others if they found that the Union had acted "maliciously, or wantonly, or oppressively." This instruction was objected to, the basis being that the cause was not a proper one for exemplary damages.
 
 
 64
 The Union relies on some language in Vaca, supra, 386 U.S. at 195, 87 S.Ct. 903, which says that under the circumstances of that case neither compensatory nor punitive damages were proper. Dicta in Deboles v. Trans World Airlines, Inc., 552 F.2d 1005 (3d Cir. 1977), indicates that such damages are not recoverable.
 
 
 65
 In Butler v. Local U. 823, Int. Bro. of Teamsters, etc., 514 F.2d 442 (8th Cir. 1975), the Local's conduct was not regarded as the type "of outrageous or extraordinary conduct for which extraordinary remedies are needed." The opinion continued that it amounted to the commonly encountered policy of favoring one group of members over another. The Eighth Circuit expressed the view that in order to have exemplary damages, there had to be express malice. The Butler court also mentioned that the federal courts should fashion remedies under the labor statutes with a view to achieving a goal of industrial peace.
 
 
 66
 The Fourth Circuit in Harrison v. United Transp. Union, 530 F.2d 558 (4th Cir. 1975), cert. denied, 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976), held that punitive damages were proper where the union was guilty of misleading conduct in the extinguishment of a railroad conductor's right to pursue his grievance. The court said that in a suit against a union for failure to provide fair representation, punitive damages were important in bringing about the objectives of the remedy. The fair representation case was compared to the civil rights action. That court also rejected the necessity for having actual malice in the sense of personal animosity. Compare also Emmanuel v. Omaha Carpenters Dist. Council, 560 F.2d 382, 386 (8th Cir. 1977).
 
 
 67
 We are not convinced that actual animosity or express malice or premeditated malice are essential to the award of punitive damages. Wanton conduct or reckless disregard for the rights of the employee should suffice. We approve, therefore, of the submission by the court of the issue of exemplary damages to the jury, and we find no fault in the trial court's instruction.
 
 
 68
 Nor are we able to say that the amount awarded was excessive. We can, however, say that the sum of $75,000 seems high, and as a result we feel that the trial court should have an opportunity to reconsider the question whether it is excessive and to order a remittitur if on reconsideration it determines that the amount is excessive. This question is better determined by the trial judge who heard the evidence and is more in tune with the facts than is this court.
 
 
 69
 The judgment of the district court is affirmed with the exception of the award for exemplary damages. As to that, the trial court is directed on remand to reconsider the amount[2] of the exemplary damage award in order to determine whether it is excessive. Should the trial court conclude that it is excessive, that court is authorized to order the amount of the excess to be remitted by the appellee or, in the alternative, the court is authorized to grant a new trial on the question. If it determines that it is not excessive, it shall allow it to stand.
 
 
 70
 It is so ordered.
 
 
 
 [1]
 Dean Jones was the appropriate officer of the Union for the lodging of the claimed grievance. There was some confusion, which appeared in one paragraph of the letter. This resulted from the statement that the writer believed that Jones was acting on behalf of the carrier. It was very clear that he was communicating with the Brotherhood and was requesting that he act on his behalf. The letter said:
 We have been informed that you are the officer of the carrier authorized to receive grievances under Rule 21 of the agreement between the Union Pacific Railroad and System Federation No. 105, International Brotherhood of Electrical Workers, dated April 1, 1957. If you are not the officer so authorized under Rule 21 would you please, in your official capacity as union representative of Mr. Foust, please inform us by return mail who is the officer of the carrier authorized to receive grievances and also, please forward on to him this written grievance claim which we are submitting pursuant to Rule 21.
 On February 5, 1971, Mr. L. D. Foust received a letter from Mr. C. O. Jett, a carbon of which was sent to Mr. Leo Wisniski, General Chairman of the I.B.E.W., which terminated Mr. Foust's services with the Union Pacific Railroad. A copy of this letter is attached. It is Mr. Foust's contention that his termination was in clear violation of the agreement between the Union Pacific Railroad and the International Brotherhood of Electrical Workers. Mr. Foust has complied with Rule 25 of said agreement which deals with personal injury. He has filed all papers requested of him by the Union Pacific Railroad. His doctor, Doctor Taylor, has kept the Union Pacific informed as to Mr. Foust's medical progress. Dr. Taylor is a Union Pacific doctor.
 Pursuant to Rule 21 Mr. Foust is making this written report of his grievance claim and hereby requesting the International Brotherhood of Electrical Workers to do everything within their power to enable Mr. Foust to be re-enstated as an employee of the Union Pacific Railroad without any loss of wages or loss of seniority. The action of Mr. C. O. Jett was completely arbitrary and capricious, without proper foundation. We will be more than happy to supply you with any and all information we have concerning this incident to assist you in the investigation of this matter. *719.
 A carbon of this letter is being sent to Mr. Wisniski and to the President of the International Brotherhood of Electrical Workers to insure that proper notification is given to the union pursuant to Rule 21 and also enter an attempt to help to expedite this matter.
 As you are well aware, Mr. Foust filed another claim with you on June 17, 1970 in regards to a union agreement violation that came to his knowledge in late May, 1970. According to Rule 21, paragraph one, all claims not disallowed within 60 days are to be deemed allowed. Mr. Foust to this date has never received any correspondence from you in regards to this claim that he filed on June 17, 1970. You informed him in December by telephone that the union was not going to do anything in regards to his claim due to the fact that he had retained our law firm to assist him in his personal injury claim against the Union Pacific Railroad. For your knowledge and for the knowledge of Mr. Wisniski, who I understand gave you this information to convey to Mr. Foust, Mr. Foust did not retain our firm until late November, 1970, long after the 60 day claim period had expired. We would appreciate some acknowledgment of his claim we are herewith filing and appreciate any and all support the union can give Mr. Foust in regards to this matter. As I indicated to you in our letter of January 21, 1971, Mr. Foust is presently and has always been a strong union man. He looks towards the union for security and backing but is becoming very dishearten (sic) by the unions lack of cooperation.
 If I can assist you in anyway or if you require any information from Mr. Foust in regards to this claim, please let me know at your early convenience.
 There is little reason for misunderstanding by the Brotherhood as to what was intended here.
 1a The tangible dollars and cents evidence was from the plaintiff. He said that his wage loss in the period in question exceeded $31,000. He also testified that he spent $1,000 for medical costs in connection with his wife's illness. No expert testimony was given as to the value of the fringe benefits that were the intangible property right of the job. We doubt whether such expert testimony would have added anything. The jury was no doubt convinced that the mentioned values were substantial enough to justify the verdict.
 
 
 [2]
 As to the authority of the appellate court so to act, see, e. g., Du Breuil v. Stevenson, 369 F.2d 690 (5th Cir. 1966); Matanuska Valley Lines, Inc. v. Neal, 255 F.2d 632, 17 Alaska 425 (9th Cir. 1957)