793 F.2d 1502
 123 L.R.R.M. (BNA) 2705, 105 Lab.Cas. P 11,986
 Marcus GALINDO, Plaintiff-Appellee,
v.
STOODY COMPANY, et al., Defendants.
and Local 803, Allied Industrial Workers of America,
AFL-CIO, Defendant- Appellant.
Marcus GALINDO, Plaintiff-Appellee,
v.
STOODY COMPANY, et al., Defendants.
and International Union of Allied Industrial Workers of
America, AFL-CIO, Defendant-Appellant.
 Nos. 85-5920, 85-5921.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1986.
Decided July 15, 1986.
 
 Margaret Unwa, Newman & Faith, Inc., Covina, Cal., for plaintiff-appellee.
 Matthew R. Robbins, Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, Wis., for defendant-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON and BEEZER, Circuit Judges, and JAMESON, Senior District Judge*.
 PREGERSON, Circuit Judge:
 
 
 1
 The International Union, Allied Industrial Workers of America, AFL-CIO ("the International") and Local 803, Allied Industrial Workers of America, AFL-CIO ("the Local") appeal from a judgment entered against them following a non-jury trial. The district court found that the International and the Local breached their duty of fair representation in connection with the layoff of Marcus Galindo by the Stoody Company ("Stoody"). Specifically, the district judge found the Local liable for failing to notify Stoody that Galindo was a union steward, and thus entitled to seniority, and the Local and International liable for failing properly to prepare and present Galindo's grievance at arbitration. We affirm the judgment as to the Local based on its failure to notify Stoody and reverse the judgment as to the Local and the International based on the presentation of Galindo's grievance.
 
 BACKGROUND
 
 2
 Marcus Galindo was hired by Stoody in 1978. Galindo's employment at all times was governed by a collective bargaining agreement ("the Agreement") between Stoody and the Local and International. The Agreement provided that any layoffs would be conducted in reverse order of seniority. The Agreement also provided "super-seniority" status for union stewards:
 
 
 3
 In the event of a layoff, top seniority for stewards will give them preference for retention in the classification, on the shift and department they were elected to....
 
 
 4
 The Agreement further stated that "employees shall be represented by a steward for each foreman or supervisor from their respective department." Finally, the Agreement required that "the [Local] will notify the Company within three (3) days of any replacement of stewards."
 
 
 5
 In August 1982, Galindo was transferred to the "stores" department at Stoody. This department had only two employees--Galindo and a supervisor. In December 1982, Galindo asked Joe Peon, President of Local 803, if he was the steward for the "stores" department. Peon informed Galindo that he was a steward.
 
 
 6
 In December and January, Galindo, concerned about rumors of impending layoffs, asked Peon if he had notified Stoody of his stewardship. On each occasion Peon stated that although he had not notified Stoody of Galindo's stewardship, he would do so. On February 2, 1983, Galindo's name appeared on a list of employees to be laid off on February 7. When Galindo approached Peon about this situation, Peon said, "Yeah, don't worry about it."
 
 
 7
 Peon then sought, but failed, to convince Stoody's Director of Employee Relations that he had notified the company that Galindo was a steward. Peon then called Adam Marthe, an International representative, and admitted that he had "goofed" and needed help. At that time, Peon told Marthe that he had forgotten to tell Stoody that Galindo was a steward.
 
 
 8
 After meetings between representatives of Stoody and the Local failed to prevent Galindo's layoff, the Local, assisted by Marthe, filed a grievance on behalf of Galindo. When the matter could not be resolved through the grievance process, the Local decided to take the case to arbitration. In preparation for arbitration, Marthe asked Galindo for a written statement concerning his testimony, but Galindo refused. Additionally, Marthe consulted with the Local's secretaries who searched for records of the union notifying the company concerning the appointment of stewards, but found none.
 
 
 9
 At the arbitration hearing, Peon and Galindo testified that Peon had telephoned Stoody, in Galindo's presence, and informed a personnel department employee that Galindo was a steward. The arbitrator rejected this testimony in an opinion issued on June 1, 1983. In finding that the company was not obligated to recognize Galindo as a shop steward, the arbitrator found that the Union had failed to notify Stoody within three days of Galindo's "appointment" to a stewardship. The arbitrator also noted in passing that Galindo had never been formally elected a steward.
 
 
 10
 On October 19, 1983, Galindo filed suit in federal district court seeking relief against Stoody, the Local, and the International under 29 U.S.C. Sec. 185. The complaint alleged that Stoody had breached the Agreement by laying off Galindo (this claim was dropped before trial). The complaint also alleged that the Local and the International had breached their duty of fair representation by: (1) failing to use effective means to notify Stoody of Galindo's stewardship; (2) failing to "properly investigate Stoody's position concerning notification"; and, (3) advising Galindo that he was not permitted to retain legal counsel at the arbitration.
 
 
 11
 At trial, both Galindo and Peon admitted that they had lied at the arbitration hearing when they testified that Peon had informed Stoody by telephone that Galindo was a steward.
 
 
 12
 The district court held that the Local and the International had breached their duty of fair representation to Galindo in connection with his layoff. At the outset, the court ruled that Galindo was a steward even though he had never been elected and had never performed steward duties. It found that Peon waived the election requirement and that, in any event, an election would have been "meaningless" because Galindo was the only non-supervisory employee in the department and thus had the only vote. The district court also held that "no occasion [had arisen] for [Galindo] to discharge any of the specific duties of a steward" in the two months between his appointment and layoff.
 
 
 13
 The district court held that the Local's failure to notify Stoody was a breach of its duty of fair representation. As a separate finding of liability, the court found that the way Marthe had prepared and handled Galindo's arbitration constituted a breach of the duty of fair representation. The court stated:
 
 
 14
 Mr. Marthe's failure to insist upon written statements from the witnesses, his failure to attempt to dissuade the union president from giving perjured testimony, and his failure to investigate past practice adequately and establish past practice with respect to informal notification and the waiving of election, all of this presents a picture of gross and unjustifiable negligence and breach of duty.
 
 
 15
 The court found that the International was liable for this breach of the duty of fair representation because it undertook to represent Galindo. The court also found that the Local was liable because its duty to fairly represent one of its members, Galindo, was "non-delegable."
 
 
 16
 As to damages, the district court awarded lost wages and fringe benefits to Galindo up to December 1, 1984.[1] Despite conflicting testimony, the court held that Galindo had never accepted or been offered an "equivalent" job, although he did work temporarily at another company. Accordingly, the judge awarded $26,000 to Galindo for the Local's failure to notify the company that Galindo was a steward. This amount represented lost wages and fringe benefits from Galindo's layoff in February 1983 to December 1, 1984, mitigated by earnings at interim jobs. The damages for inadequate representation at the arbitration hearing also represented lost wages and fringe benefits through December 1, 1984, but were calculated from the date of the hearing (May 16, 1983). The district court awarded $22,000 for this second breach; this sum was "subsumed" in the $26,000 award.
 
 
 17
 The Local and the International timely appealed. The appellants contend that the district court erred: (1) in finding that Galindo was a steward; (2) in finding that a breach of duty of fair representation had occurred; and (3) in computing damages. Appellants also contend that Galindo's suit was barred by the statute of limitations and that the issue of their conduct at arbitration was not before the court.
 
 DISCUSSION
 
 18
 I. Whether Galindo's claims are barred by the statute of limitations.
 
 
 19
 Both parties agree that Galindo's claims are governed by the six-month statute of limitations of section 10(b) of the National Labor Relations Act. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983); Peterson v. Kennedy, 771 F.2d 1244, 1251 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). The parties disagree, however, on when the action accrued or, alternatively, whether the statute of limitations is tolled in this case.
 
 A. Standard of Review
 
 20
 Where the facts are not in dispute, the date of accrual of a statute of limitations is a question of law reviewed de novo. See Acri v. International Association of Machinists and Aerospace Workers, 781 F.2d 1393, 1395 (9th Cir.1986); see also Aragon v. Federated Department Stores, 750 F.2d 1447, 1450 (9th Cir.) (whether limitations period is tolled is reviewed de novo ), cert. denied, --- U.S. ----, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985), --- U.S. ----, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). The dates on which the pertinent actions occurred in this case are not disputed.
 
 B. Analysis
 
 21
 The question in this case is whether Galindo's duty of fair representation claims accrued in February 1983, when he found out that Peon had failed to notify the company, or on June 1, 1983, when the arbitrator issued his order. Because Galindo's suit was filed on October 19, 1983, a finding that his claims accrued in February would bar his action.
 
 
 22
 Although the Court in DelCostello indicated that section 10(b) requires filing of a duty of fair representation claim within six months of the action's accrual, it did not provide guidance in determining when a duty of fair representation claim accrues. Courts have generally held that the section 10(b) limitations period begins to run when the employee "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." Howard v. Lockheed-Georgia Co., 742 F.2d 612, 614 (11th Cir.1984) (per curiam) (quoting NLRB v. Don Burgess Construction Co., 596 F.2d 378, 382 (9th Cir.), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979)). Thus, in a duty of fair representation case, the six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union. See e.g., Dowty v. Pioneer Rural Electric Cooperative, Inc., 770 F.2d 52, 56 (6th Cir.) (per curiam), cert. denied, --- U.S. ----, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985); Samples v. Ryder Truck Lines, Inc., 755 F.2d 881, 887 (11th Cir.1985).
 
 
 23
 This general rule, however, is not consistently applied. This court, in fact, recently acknowledged:
 
 
 24
 The question remains open in this circuit "whether accrual occurs when the employee learns, or should have learned, that his dispute was finally resolved, ... or whether accrual occurs when the employee learns, or should have learned, that the union may have violated its duty of fair representation."
 
 
 25
 Harper v. San Diego Transit Corp., 764 F.2d 663, 669 (9th Cir.1985) (quoting Barina v. Gulf Trading & Transportation Co., 726 F.2d 560, 562 n. 2 (9th Cir.1984)). A reasoned analysis of the question when a duty of fair representation claim accrues must focus on the context in which the claim arose.
 
 
 26
 The vast majority of duty of fair representation claims arise in the grievance procedure context: the employee claims that a union failed to process a grievance or mishandled its presentation. In determining when the six-month period accrues, the simplest case is one where a union decides not to file a grievance; the cause of action generally accrues when the employee learns or should have learned of the union's decision. See e.g., Demars v. General Dynamics Corp., 779 F.2d 95, 97 (1st Cir.1985); Harper, 764 F.2d at 669.[2] Similarly, where a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the the employee learns of the arbitrator's award. See e.g., Dowty, 770 F.2d at 56; Samples, 755 F.2d at 887 n. 7. In this case, therefore, Galindo's duty of fair representation claim based on Marthe's alleged errors in presenting Galindo's grievance before the arbitrator did not accrue until Galindo learned of the arbitrator's decision on June 1, 1983; thus, this claim is timely.
 
 
 27
 The question of accrual becomes more complex where a duty of fair representation claim is not based on a union's processing of a grievance. Here, one of Galindo's claims is that the Local breached its duty of fair representation by failing to notify Stoody that Galindo was a steward. Galindo knew or should have known of this alleged breach no later than February 6, when he was laid off, and perhaps four days earlier when his name appeared on the list of employees to be laid off. Under the general accrual rule, then, this claim accrued in February of 1983 and would be time-barred.
 
 
 28
 The next inquiry is whether the availability of grievance procedures and arbitration proceedings should toll the limitations period. In Adkins v. International Union of Electrical, Radio & Machine Workers, 769 F.2d 330 (6th Cir.1985), the Sixth Circuit recently considered this issue. It noted:
 
 
 29
 The district court held here that, once the employees knew or should have known that a breach had occurred, their action accrued and the limitations period began to run, even if some possibility of nonjudicial enforcement remained. This rule would impel the swift filing of hybrid claims at the expense of nonjudicial resolution of those claims. Certainly, the typical hybrid claim is based on the union's failure to properly process a grievance, so nonjudicial enforcement has already failed. But where the union's alleged breach of duty is in a non-grievance context, as here, the employees' good-faith attempt to exhaust their contractual remedies will prevent the accrual of their action. To hold otherwise would undercut the national policy favoring nonjudicial resolution of labor disputes. Although, as the jury found, here any attempt to use the grievance procedure in fact was futile, there was no accrual of the claim for the purposes of the limitation period so long as plaintiffs were making a valid, timely, and nonfrivolous attempt to pursue their contractual remedies in reasonable good faith.
 
 
 30
 Id. at 336 (citations omitted).[3] For similar reasons, the Seventh Circuit recently held that the six-month limitation period on a duty of fair representation claim is tolled while an employee pursues intra-union grievance procedures, even if those procedures are ultimately futile. See Fransden v. Brotherhood of Railway, Airline and Steamship Clerks, 782 F.2d 674, 681-84 (7th Cir.1986).
 
 
 31
 The reasoning of the Adkins court is sound. An employee should not be penalized for seeking to resolve his dispute through the grievance process before filing a suit in federal court. Such a result would be particularly unsettling in this case; Galindo would be forced to claim in his duty of fair representation suit that the Local failed to notify Stoody while the Local argues in arbitration that it did notify the company. More importantly, such a rule would encourage the premature filing of duty of fair representation suits in lieu of resort to non-judicial grievance measures.[4]
 
 
 32
 In sum, a fair representation claim based on how a grievance is presented to an arbitrator accrues when the employee learns of the arbitrator's decision. A fair representation claim not based on how a grievance is presented to an arbitrator is tolled while good faith attempts are made to resolve that claim through grievance procedures.[5] Thus, Galindo's claim that the Local and International mishandled his arbitration did not accrue until June 1, 1983, when Galindo learned of the arbitrator's decision. His claim that the Local failed to notify Stoody were tolled until that time. See Adkins, 769 F.2d at 336. Galindo's claims before the district court were thus timely.
 
 
 33
 II. Whether Galindo was a Steward.
 
 
 34
 The appellants argue that Galindo was not a steward because he was not elected and because he never performed steward duties. Accordingly, they argue that they never were under a duty to inform Stoody that Galindo was a steward.
 
 A. Standard of Review
 
 35
 The district court's finding that Galindo was a steward presents a factual determination that we review under the clearly erroneous standard. See United States v. McConney, 728 F.2d 1195, 1201-02 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 36
 Appellants contend that the district court failed to defer to the arbitrator's decision that Stoody did not have to recognize Galindo as a steward because he had not been elected. An arbitrator's factual determinations generally receive deference by the courts. See Carpenters' Local Union No. 1478 v. Stevens, 743 F.2d 1271, 1275 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). An arbitrator's interpretation of a collective bargaining agreement that draws its essence from the agreement may not be overturned merely because a court may have interpreted the contract differently. See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).
 
 B. Analysis
 
 37
 There is substantial evidence to support the district court's finding that Galindo was a steward. Peon, the Local's president, testified that he had appointed Galindo a steward. Peon also testified that he had the power to make such appointments and in fact had appointed other stewards. Additionally, the chairman of the bargaining committee testified that Peon was responsible for determining who was a steward. Further, in its formal and informal attempts to prevent Galindo's layoff, appellants continually insisted that Galindo was a steward.
 
 
 38
 Appellants argue on appeal that Galindo did not perform any of the duties of a steward. As the district court found, however, Galindo was a steward for only a few months and had no occasion to handle a grievance or discharge or any other duties of a steward. Further, the fact that Galindo was the only person in his department did not preclude him from being a steward. Although neither Galindo's predecessor or successor ever claimed to be a steward, there was at least one other steward, recognized by the company and the union, who represented a one-person department. A steward for Galindo's department was also proper under the Agreement because Galindo's department had a supervisor.
 
 
 39
 Finally, the appellants argue that Galindo was not a steward because he was never elected. They note that both the International's constitution and the Local's by-laws require election of stewards. Moreover, the Agreement provides super-seniority for stewards "on the shift and department they were elected to." Because Galindo was the only person in his department, however, a formal election would have been unnecessary; Galindo would have been the only possible candidate and the only eligible voter. As the district court found: "Election would have been meaningless in a one-man department, an empty formality."
 
 
 40
 The election question, however, is more problematic in light of the arbitrator's finding that "the Agreement contemplates that shop stewards are elected to a term of office." Appellants argue that the district court should have deferred to the arbitrator's "interpretation" on this issue. Several factors, however, counsel rejecting this contention.
 
 
 41
 Initially, unlike the typical case in which deference to an arbitrator's decision is involved, Galindo does not seek to overturn an arbitration award. The arbitration involved Stoody's right to lay off Galindo. Here, Galindo's challenge is not to the merits of that award, but to the union's representation of Galindo at the arbitration hearing.
 
 
 42
 Further, as the district court found, the Local did not address the election issue at arbitration. The Local's position at arbitration was that Stoody was notified that Galindo was a steward. The bulk of the arbitrator's decision is directed toward the notification issue. The arbitrator did not address the election question except as an afterthought in the last paragraph of his decision. Thus, although Stoody apparently brought up the election issue at arbitration, there is no indication that the arbitrator considered whether an election was necessary in a one-person department or, alternatively, whether the Local waived the election requirement. Because the election issue was not addressed at the arbitration hearing and was not the focus of the arbitrator's decision, the arbitrator's findings on this issue should not be dispositive, especially since one of Galindo's claims is based on the failure of the Local to present this issue.[6]
 
 
 43
 Accordingly, the district court's finding that Galindo was a steward was not clearly erroneous.
 
 
 44
 III. Whether the Duty of Fair Representation Claim Based on Marthe's Presentation of Galindo's Grievance to the Arbitrator was Properly Before the District Court.
 
 
 45
 Appellants assert that neither the pleadings nor the pretrial conference order raise the issue whether Marthe's presentation of Galindo's grievance to the arbitrator was a breach of the duty of fair representation. They note that the only related claim, that the union failed to properly investigate Stoody's "position concerning notification of union stewards," was expressly dropped before trial. Moreover, they point out that, aside from the claim that the Local advised Galindo that he was not permitted counsel,[7] Galindo expressly stated that Marthe's presentation of his grievance at arbitration was not at issue. Nevertheless, the district court found an independent breach of the duty of fair representation "in connection with the way in which the arbitration was investigated, prepared and handled." Galindo contends that this issue was litigated and that the district court properly amended the pleadings to include this theory of liability.
 
 A. Standard of Review
 
 46
 Fed.R.Civ.P. 15(b) permits the amendment of pleadings to conform to the evidence when the parties expressly or impliedly consent to the trial of unpleaded issues. This rule reflects the liberal policy favoring amendments of pleadings at any time. Consolidated Data Terminals v. Applied Digital Data Systems, Inc., 708 F.2d 385, 396 (9th Cir.1983). Whether the trial court properly amended the pleadings pursuant to Rule 15(b) is reviewed for an abuse of discretion. See Davis & Cox v. Summa Corp., 751 F.2d 1507, 1522 (9th Cir.1985); Save Lake Washington v. Frank, 641 F.2d 1330, 1340 (9th Cir.1981).[8]
 
 B. Analysis
 
 47
 An amendment that seeks to conform the pleadings to proof introduced at trial is proper under Rule 15(b) unless it results in prejudice to one of the parties. See Mechmetals Corp. v. Telex Computer Products, Inc., 709 F.2d 1287, 1294 (9th Cir.1983); Consolidated Data, 708 F.2d at 396. It is not enough that an issue may be "inferentially suggested by incidental evidence in the record," Consolidated Data, 708 F.2d at 396 (quoting Cole v. Layrite Products Co., 439 F.2d 958, 961 (9th Cir.1971)); the record must indicate that the parties understood that the evidence was aimed at an unpleaded issue. Id. at 397.
 
 
 48
 Here, the record is replete with direct references to whether Marthe's investigation and representation of Galindo's grievance before the arbitrator was a breach of the duty of fair representation. Marthe testified at length as to how he prepared for and presented Galindo's grievance at arbitration. Further, in overruling appellant's objection to Galindo's cross-examination of Marthe regarding Marthe's preparation, the court noted that "the entire case seems to involve the presentation of this grievance and whether some breach of the duty of fair representation was involved therein." Additionally, appellants' counsel expressly addressed this issue both in arguing its motion to dismiss the case and in closing argument.
 
 
 49
 Accordingly, appellants were not prejudiced by the post-trial amendment because they clearly understood that the issue of Marthe's presentation of Galindo's grievance was before the court. The district court, therefore, did not abuse its discretion by entering findings on this issue. See Davis & Cox, 751 F.2d at 1522.
 
 
 50
 IV. Whether the District Court Correctly Found a Breach of the Duty of Fair Representation.
 
 A. Standard of Review
 
 51
 Whether a union's conduct amounted to a breach of its duty of fair representation presents a mixed question of law and fact that we review de novo. See United States v. McConney, 728 F.2d at 1204; see also Johnson v. United States Postal Service, 756 F.2d 1461, 1465 (9th Cir.1985) (court applied de novo standard of review to "ultimate findings" of a trial court's grant of a union's motion to dismiss a duty of fair representation case). But see Robesky v. Qantas Empire Airways Ltd., 573 F.2d 1082, 1091 (9th Cir.1978) (suggesting that breach of duty of fair representation is a question for the trier of fact); Warren v. International Brotherhood of Teamsters, 544 F.2d 334, 341 (8th Cir.1976) (applying clearly erroneous standard).
 
 B. Duty of Fair Representation Standard
 
 52
 To establish a breach of a union's duty of fair representation, an employee most show that the union's conduct was "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1482 (9th Cir.1985). In the grievance context, this standard prohibits a union from ignoring a meritorious grievance or processing that grievance perfunctorily. Vaca, 386 U.S. at 191, Castelli, 752 F.2d at 1483. A union, however, need not process a meritless grievance. See Johnson, 756 F.2d at 1465.
 
 
 53
 Because unions must retain discretion to act in what they perceive to be their members' best interests, we have narrowly construed this doctrine. See Peterson, 771 F.2d at 1253; Johnson, 756 F.2d at 1465. Thus, a union's representation of its members "need not be error free." Castelli, 752 F.2d at 1482. We have repeatedly held that mere negligent conduct by a union does not constitute a breach of the union's duty of fair representation. Peterson, 771 F.2d at 1253.
 
 
 54
 In some cases, however, "an act of omission by a union may be so egregious and unfair as to be arbitrary, thus constituting a breach of the duty of fair representation." Castelli, 752 F.2d at 1482 (citing Robesky, 573 F.2d at 1090). The distinction between an error that is "arbitrary" and one that is merely negligent has vexed this court. See Peterson, 771 F.2d at 1253; Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1272 (9th Cir.1983). Various cases have elaborated a number of possible standards[9] for determining when an omission rises to the level of arbitrariness. In Peterson, we recently attempted to synthesize the various standards set forth in previous cases. We stated:
 
 
 55
 There are some significant general principles that emerge from our previous decisions. In all cases in which we found a breach of the duty of fair representation based on a union's arbitrary conduct, it is clear that the union failed to perform a procedural or ministeral act, that the act in question did not require the exercise of judgment and that there was no rational and proper basis for the union's conduct.
 
 
 56
 Id. at 1254; see Dutrisac, 749 F.2d at 1274 ("[W]e limit our holding that union negligence may breach the duty of fair representation to cases in which the individual interest at stake is strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim."), cited in Evangelista v. Inlandboatmen's Union of Pacific, 777 F.2d 1390, 1399 n. 5 (9th Cir.1985); see also Eichelberger v. NLRB, 765 F.2d 851, 855 n. 7 (9th Cir.1985) ("Dutrisac may further be limited to situations where a true ministerial act is involved.").
 
 
 57
 Under Peterson and Dutrisac, then, the crucial inquiry is whether the union's error involved a judgmental or ministerial act. Additionally, the union's conduct must prejudice a strong interest of the employee. See Dutrisac, 749 F.2d at 1274; Eichelberger, 765 F.2d at 855.
 
 C. The Failure to Notify Stoody
 
 58
 Under the Peterson standard, or any other test, it is hard to imagine a more clear case of arbitrary conduct than Peon's failure to notify Stoody that Galindo was a steward. This was a mere "ministerial" act that required no judgment. There is no rational explanation for Peon's failure simply to write or telephone Stoody. Moreover, the act was severely detrimental to a strong individual interest; had Stoody been notified, Galindo would probably not have been laid off. See Dutrisac, 749 F.2d at 1274 (finding breach of duty of fair representation where union failed to pursue timely a meritorious grievance); Tenorio v. NLRB, 680 F.2d 598, 602 (9th Cir.1982) (finding breach of duty of fair representation where union rejected grievance without hearing employees' explanation of facts leading to their discharge). Peon's error is especially egregious in light of the rumors of impending layoffs and Galindo's repeated queries as to whether Peon had notified Stoody. Although Galindo attempted to retain his job through informal meetings between representatives of Stoody and the Local, grievance proceedings, and arbitration, Peon's failure to notify Stoody effectively extinguished Galindo's seniority rights.
 
 
 59
 Accordingly, Peon's unjustified failure to notify Stoody that Galindo was a steward constitutes "arbitrary" conduct. The district court thus properly held this to be a breach of the Local's duty of fair representation.[10]
 
 
 60
 D. Presentation of Galindo's Claim at Arbitration
 
 
 61
 The district court also found that Marthe's presentation of Galindo's claim before the arbitrator constituted a breach of the duty of fair representation.
 
 
 62
 This court has repeatedly acknowledged that unions are afforded wide latitude in determining how to handle a grievance; in fact, "a union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance ... or in presenting the grievance at an arbitration hearing. " Peterson, 771 F.2d at 1254 (emphasis added) (citing Dutrisac, 749 F.2d at 1273); see Ness v. Safeway Stores, Inc., 598 F.2d 558, 560-61 (9th Cir.1979) (per curiam) (no breach where union decided to convene adjustment board with one of its members missing). Thus, the district court's reliance on "Mr. Marthe's failure to insist upon written statements" and "his failure to investigate past practice [of stewardship notification] adequately" is misplaced. At worst, these are negligent errors of judgment.[11] Similarly, the apparent failure of Marthe to bring up the election issue at arbitration reflects a judgmental decision by Marthe; he may have decided not to call attention to that issue for tactical reasons. Moreover, because the thrust of the arbitrator's decision involved Peon's failure to notify Stoody, the arbitrator's award would not have been affected by a finding that an election was unnecessary.
 
 
 63
 Marthe's overall representation of Galindo at the arbitration was, at worst, negligent.[12] In fact, the district court concluded that his combined errors were "gross and unjustifiable negligence." His representation cannot be deemed an irrational failure to perform a "ministerial" act.[13] Thus, the district court erred in finding that Marthe's handling of Galindo's grievance was a breach of the duty of fair representation.
 
 
 64
 V. Whether the District Court Properly Computed Galindo's Damages.
 
 A. Standard of Review
 
 65
 A district court's computation of damages is a finding of fact reviewed under the clearly erroneous standard. See Woods v. United States, 724 F.2d 1444, 1451 (9th Cir.1984). Whether the district court selected the correct legal standard in computing damages is reviewed de novo. See McConney, 728 F.2d at 1201.
 
 B. Analysis
 
 66
 "The fundamental purpose of unfair representation suits is to compensate for injuries caused by violations of employees' rights." International Brotherhood of Electrical Workers v. Foust, 442 U.S. 42, 49-50, 99 S.Ct. 2121, 2126-27, 60 L.Ed.2d 698 (1979). Accordingly, a union is liable to an employee for compensatory damages flowing from the union's conduct. See Bowen v. United States Postal Service, 459 U.S. 212, 224-31, 103 S.Ct. 588, 595-99, 74 L.Ed.2d 402 (1983); Vaca v. Sipes, 386 U.S. 171, 196-98, 87 S.Ct. 903, 919-21, 17 L.Ed.2d 842 (1967).[14] Compensable damages may include lost wages and fringe benefits. See Foust v. International Brotherhood of Electrical Workers, 572 F.2d 710, 718-19 (10th Cir.1978) (approving award of compensatory damages against union where court instructed the jury to consider wages and fringe benefits), rev'd in part on other grounds, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); Richardson v. Communications Workers of America, 486 F.2d 801, 806 (8th Cir.1973) (approving similar instruction in suit against employer and union); see also Pitts v. Frito-Lay, 700 F.2d 330, 334-35 (6th Cir.1983) (lost wages awardable if chargeable to union conduct).
 
 
 67
 The damages awarded by the district court included lost wages through December 1, 1984, offset by wages earned at other employment. The district court expressly "allowed a sum for the loss of fringe benefits which plaintiff would have earned at Stoody during the period covered by the damage award." The appellants challenge this award on three grounds.
 
 
 68
 First, they contend that their liability for lost wages should have ended in May 1983, when Galindo allegedly received an offer of employment from Porvene-RolA-Roof. Appellants, analogizing this case to NLRB back-pay awards for unfair labor practices, contend that Galindo's refusal to accept the offer curtailed its damage liability. See Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 199-200, 61 S.Ct. 845, 855, 85 L.Ed. 1271 (1941); Canova v. NLRB, 708 F.2d 1498, 1506 (9th Cir.1983). In this case, however, the district court expressly accepted Galindo's testimony that he did not receive such an offer. Although appellants challenge this finding on appeal, it was for the district court to determine whether an offer was made. See Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1512-13, 84 L.Ed.2d 518 (1985) (credibility determination of district court entitled to great deference and "can virtually never be clear error").
 
 
 69
 Appellants also contend that its lost-wage liability should have ended when Galindo obtained temporary interim employment. This contention is meritless and contrary to the NLRB cases to which appellants analogize; interim employment reduces, but does not cut off, back-pay liability. See Phelps-Dodge, 313 U.S. at 198, 61 S.Ct. at 854; Oil, Chemical and Atomic Workers International Union v. NLRB, 547 F.2d 598, 602 (D.C.Cir.), cert. denied, 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977). Because damages for duty of fair representation suits are intended to make the plaintiff whole, the district court properly held that Galindo's interim earnings should only be deducted from his lost earnings.
 
 
 70
 Finally, appellants contend that the court erred in awarding a sum representing lost fringe benefits. We recognize that fringe benefits are an important part of an employee's overall compensation package. Accordingly, a damage award in a duty of fair representation suit should include those fringe benefits which the employee would have actually received had his or her employment not been wrongfully terminated. See Foust, 572 F.2d at 718-19; see also Local 2750, Lumber & Sawmill Workers v. Cole, 663 F.2d 983, 987 (9th Cir.1981) (damages awarded against employer for breach of contract that failed to include loss of seniority pay and vacation benefits "did not make discharged employee whole"). Where an employee's fringe benefits include medical and life insurance, a plaintiff should be compensated for the loss of those benefits if the plaintiff has purchased substitute insurance coverage or has incurred, uninsured, out-of-pocket medical expenses for which he or she would have been reimbursed under the employer's insurance plan.[15]
 
 
 71
 In this case, however, the district court awarded Galindo the value of the medical and life insurance premiums that Stoody would have paid on his behalf had his employment not been interrupted without a showing that Galindo would have received any payments thereunder, or that he actually incurred expenses for substitute medical or life insurance coverage. Such an award was improper because lost insurance coverage, unless replaced or unless actual expenses are incurred, is simply not a monetary benefit owing to the plaintiff. To include such an award, then, would make a plaintiff more than whole.
 
 
 72
 Accordingly, the district court should determine on remand the amount of any actual expenses incurred by Galindo as a result of lost medical and life insurance benefits. Galindo is, of course, entitled to any lost seniority pay, vacation pay, or any other fringe benefits that he would have actually received. See Cole, 663 F.2d at 983.
 
 CONCLUSION
 
 73
 Galindo's claim based on Peon's failure to notify Stoody that Galindo was a steward was timely filed. The trial court properly found that Galindo was a steward and that Peon's failure to notify Stoody was a breach of the Local's duty of fair representation. The judgment against the Local on this claim is therefore affirmed. The damage award of $26,000 is also affirmed except to the extent that the district court is required on remand to recompute the award consistent with this opinion.
 
 
 74
 The claim based on Marthe's preparation and presentation of Galindo's grievance at arbitration was properly before the district court. The court erred, however, in finding a breach of duty of fair representation based on Marthe's preparation and presentation of Galindo's grievance. Accordingly, the judgment against the Local and International on this ground is reversed.
 
 
 75
 AFFIRMED in part; REVERSED AND REMANDED in part.
 
 
 
 *
 Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation
 
 
 [1]
 On this date, the Local and Stoody negotiated a new collective bargaining agreement which eliminated stewards in one-man departments. The district court found that even if Galindo had retained his job in February, 1983, he would have been laid off on December 1, 1984 under the new Agreement. This cut-off date is not challenged on appeal
 
 
 [2]
 But cf. Barina v. Gulf Trading and Transportation Co., 726 F.2d 560, 562 n. 2 (9th Cir.1984) (suggesting that a claim does not accrue until the last date at which the union could have brought the grievance under the collective bargaining agreement)
 
 
 [3]
 See also Proudfoot v. Seafarer's International Union, 779 F.2d 1558, 1559 (11th Cir.1986) ("hybrid" action against union and employer accrues when employee learns that the "grievance procedure was exhausted or otherwise broke down to the employee's disadvantage."); Hayes v. Reynolds Metals Co., 769 F.2d 1520, 1522 (11th Cir.1985) (per curiam) (duty of fair representation claim based on merger of seniority rosters did not accrue until "grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage."); cf. International Association of Machinists and Aerospace Workers v. Aloha Airlines, Inc., 781 F.2d 1400, 1410-11 (9th Cir.1986) (in suit for breach of collective bargaining agreement under the Railway Labor Act, Sec. 10(b)'s limitation period did not accrue until union exhausted grievance remedies against employer)
 
 
 [4]
 The countervailing argument, of course, is that federal law also favors early resolution of labor disputes. See DelCostello, 462 U.S. at 168, 103 S.Ct. at 2292. We believe, however, that the policy of non-judicial resolution of labor disputes should outweigh the policy of prompt resolution of labor disputes in cases where the pursuit of contractual remedies would toll the statute for only a few months
 
 
 [5]
 This rule, of course, assumes that grievance procedures could result in the relief sought by the employee. Cf. Acri v. International Association of Machinists, 781 F.2d 1393, 1396 n. 1 (9th Cir.1986). Similarly, resort to the grievance process should toll the limitations period only if the grievance is related to the alleged breach of duty of fair representation. See Vallone v. Local Union No. 705, 755 F.2d 520, 522 (7th Cir.1984) (grievance procedures did not toll limitations period where grievances "did not address the claims raised in [the] suit")
 
 
 [6]
 See also Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273, 281 (1st Cir.1983) (arbitrator "lacks authority to decide questions the parties have not agreed to submit to him"); Wren v. Sletten Construction Co., 654 F.2d 529, 533 (9th Cir.1981) ("arbitrator did not have authority to bind the parties by deciding issues not submitted by the parties"); cf. Lackawanna Leather Co. v. United Food & Commercial Workers, 706 F.2d 228, 231 (8th Cir.1983) (en banc) (because the question whether discharge was permitted under the labor agreement required the arbitrator to interpret a particular provision, the arbitrator was permitted to interpret the provision even though "the parties failed to introduce evidence regarding the interpretation of [the provision] ....")
 
 
 [7]
 This claim was effectively dropped at trial in light of our decision in Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483-84 (9th Cir.1985), which held that employees are not entitled to counsel in arbitration
 
 
 [8]
 Although no formal amendment was made, a district court may amend the pleadings merely by entering findings on the unpleaded issues. "The rule provides that issues actually tried by the consent of the parties are treated in all respects as if they had been raised in the pleadings, even if the parties have failed formally to amend the pleadings. If an amendment should have been made, we will presume that it has been made." Davis & Cox, 751 F.2d at 1522 (citations omitted); see Consolidated Data, 708 F.2d at 396
 
 
 [9]
 Arbitrary conduct has been defined as: "reckless disregard" for employee's rights, see, e.g., Castelli, 752 F.2d at 1482; Robesky, 573 F.2d at 1089-90; "egregious, unfair and unrelated to legitimate union interests," see, e.g., Johnson, 756 F.2d at 1465 (citing Robesky, 573 F.2d at 1090); and conduct without a "rational basis," see, e.g., Gregg v. Chauffuers, Teamsters and Helpers Union Local 150, 699 F.2d 1015, 1016 (9th Cir.1983)
 
 
 [10]
 Appellants also contend Peon's failure to notify Stoody could not be a breach of its duty of fair representation because any super-seniority status obtained by Galindo would have been illegal. Assuming arguendo that a union may challenge the legality of super-seniority provisions benefitting its members, appellants' argument is unavailing
 Appellants correctly note that special benefits afforded to union stewards fall within the ambit of 29 U.S.C. 158(a)(3), which prohibits employers from discriminating among employees with respect to employment to encourage membership or participation in labor unions. See Paintsmiths, Inc. v. NLRB, 620 F.2d 1326, 1329-30 (8th Cir.1980); Teamsters Local 20 v. NLRB, 620 F.2d 991, 993 (D.C.Cir.1979) (per curiam); see also Radio Officers' Union v. NLRB, 347 U.S. 17, 39-42, 74 S.Ct. 323, 335-37, 98 L.Ed. 455 (1954). Discrimination among employees, however, is permitted for "substantial and legitimate" non-discriminatory reasons. See NLRB v. Great Dane Trailers, Inc., 388 U.S. 26, 33-34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967); Paintsmiths, 620 F.2d at 1330; J.L. Foti Construction Co. v. Laborers' International Union of North America, 742 F.2d 994, 999 (6th Cir.1984). Because of the importance of union stewards in administering collective bargaining agreements, super-seniority benefits for stewards are presumptively valid if those benefits are limited to lay-off and recall; benefits beyond layoff and recall, however, are generally invalid. See Paintsmiths, 620 F.2d at 1330, Dairylea Cooperative, 219 N.L.R.B. 656, 658 (1975), enf'd, NLRB v. Milk Drivers & Dairy Employees Local 338, 531 F.2d 1162 (2d Cir.1976); see also Permaline Corp. of America v. Sign Pictorial & Display Union Local 230, 639 F.2d 890 (2nd Cir.1981) (invalidating provisions requiring union approval before stewards could be discharged, even for cause).
 Here, the super-seniority benefits afforded Galindo under the Agreement are presumptively valid because they were limited to layoff and recall. Because appellants have failed to show that Galindo was not a legitimate steward, they have failed to establish that Galindo's stewardship was illegal.
 
 
 [11]
 In fact, Marthe requested written statements from Peon and Galindo (they refused) and inquired at the Local's office as to records of prior stewardship notification (he found none). It appears that Marthe performed at least a "minimal investigation" in preparing for arbitration. Cf. Tenorio, 680 F.2d at 601 (union failed to conduct minimal investigation); see also Eichelberger, 765 F.2d at 857 n. 10 ("The ruling of [Tenorio] finding a negligent failure to investigate ... was expressly limited to those particular circumstances.")
 
 
 [12]
 The district court also focused on Marthe's "failure" to dissuade Galindo and Peon from falsely testifying at the arbitration hearing. The record indicates, however, that Marthe did not know that Peon and Galindo would testify falsely. Marthe stated that he did not know of the fabrication and in fact told Peon and Galindo to tell the truth at arbitration. This was corroborated by Peon, who stated that he never told Marthe that he intended to lie and that Marthe told him to testify truthfully
 Moreover, even assuming that Marthe should have known of the fabrication, his decision to proceed at arbitration on the theory that Peon notified Stoody is a judgmental decision. This tactic may have been ethically improper if Marthe in fact knew that the evidence was false. Because it did not involve a ministerial act, however, Marthe's conduct, though possibly over-zealous, was not "arbitrary."
 
 
 [13]
 Further, Marthe's conduct in presenting the grievance at arbitration did not prejudice Galindo's rights. Because of Peon's failure to notify Stoody, Galindo's grievance against Stoody was essentially meritless from the outset. Since appellants could have refused to take a meritless grievance to arbitration, see Johnson, 756 F.2d at 1465, their attempt to present the grievance in a meritorious light is not a breach of their duty of fair representation. Cf. Eichelberger, 765 F.2d at 855 n. 7 (union's failure to perform ministerial act not a breach of the duty of fair representation if employee's grievance was meritless, although it may have been if the grievance were legitimate)
 We do not mean to imply, however, that the grievance was frivolous or not brought in good faith for the purposes of tolling the statute of limitations. See Adkins, 769 F.2d at 336 (suit tolled during "a valid, timely, and non-frivolous attempt to pursue [one's] contractural remedies in reasonable good faith").
 
 
 [14]
 The issue in Bowen and Vaca was the apportionment of damages between the union and the employer in a successful "hybrid" suit (alleging a breach of the duty of fair representation against the union and breach of a collective bargaining agreement against the employer). Because Galindo's claim against Stoody was dropped, apportionment is not at issue here
 
 
 [15]
 See Foust, 572 F.2d at 718 & n. 1a (suggesting that plaintiff is limited to actual expenses incurred as a result of lost insurance coverage); cf. Syvock v. Milwaukee Boiler Manufacturing Co., 665 F.2d 149, 161 (7th Cir.1981) (in a case under the Age Discrimination in Employment Act, the district court did not abuse its discretion in refusing to award lost insurance benefits where plaintiff had not purchased alternate coverage); Bonura v. Chase Manhattan Bank N.A., 629 F.Supp 353, 359 (S.D.N.Y.1986) (suggesting that awards under ADEA should be limited to out-of-pocket expenses). But cf. Fariss v. Lynchburg Foundation, 769 F.2d 958, 965 (4th Cir.1985) (indicating plaintiff in an ADEA case might recover the cost to employer of providing insurance even where no substitute insurance is purchased); Jacobson v. Pitman Moore, Inc., 582 F.Supp. 169, 179 (D.Minn.1984) (award of lost insurance benefits in ADEA case not limited to actual expenses)