56 F.3d 72
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
PLUMBERS & STEAMFITTERS LOCAL UNION NO. 44, UNITED
ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE
PLUMBING AND PIPE FITTING INDUSTRY OF
THE UNITED STATES AND CANADA,
AFL-CIO, Respondent.
 No. 94-70077.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 1995.
Decided May 18, 1995.
 
 Petition for Enforcement of an Order of the National Labor Relations Board, Nos. 19-CB-7136, 19-CB-7141 and 19-CB-7157.
 NLRB
 ENFORCEMENT GRANTED.
 Before: POOLE, BOOCHEVER, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board ("the Board") found that the Plumbers & Steamfitters Local Union No. 44 ("Local 44") violated 29 U.S.C. Sec. 158(b)(1)(A) by failing to dispatch pipeline welders from the Plumbers & Steamfitters Local Union No. 598 ("Local 598") availability list, in disregard of exclusive hiring hall procedures. The Board held that Local 44 breached its duty of fair representation by arbitrarily bypassing Local 598 welders and dispatching welders from other locals, and the Board ordered Local 44 to make whole Local 598 welders who should have been dispatched. We affirm the Board's findings and grant enforcement of its order.
 
 
 3
 The Board's findings must be upheld if the Board correctly applied the law and if its factual findings are supported by substantial evidence in the record as a whole. See Eichelberger v. NLRB, 765 F.2d 851, 853 (9th Cir. 1985).
 
 
 4
 Section 8(b)(1)(A) of the National Labor Relations Act ("the Act") states that it is "an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of the[ir] rights." 29 U.S.C. Sec. 158(b)(1)(A). "The duty of fair representation emanat[es] from Section 8(b)(1)(A) of the Act," Eichelberger, 765 F.2d at 853, and is imposed on unions because of their "exclusive authority under the [Act] to represent all employees in a bargaining unit." Stevens v. Moore Business Forms, Inc., 18 F.3d 1443, 1447 (9th Cir. 1994).
 
 
 5
 A union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). A showing of mere negligence is insufficient to constitute a breach of the unions's duty. See Galindo v. Stoody Co., 793 F.2d 1502, 1514 (9th Cir. 1986). Because a union must retain discretion to act in what it perceives to be the best interests of all its members, courts construe the fair representation doctrine narrowly and insist that a union's conduct need not always be "error free." Id.
 
 
 6
 However, when a union operates an exclusive hiring hall (a system in which workers can obtain jobs only through union referrals), the union must represent all the workers in a fair and impartial manner. "[A]ny departure from established exclusive hiring hall procedures which results in a denial of employment to an applicant ... breaches the duty of fair representation owed to all hiring hall users, and violates [the Act], absent demonstration of a legitimate justification." Cell-Crete Corp., 288 N.L.R.B. 262, 264 (1988) (citation and quotations omitted); see also NLRB v. Ironworkers Local Union No. 505, 794 F.2d 1474, 1478 (9th Cir. 1986) (union's conduct considered arbitrary and therefore a breach of its duty of fair representation when hiring hall deviated from written rules without adequate justification).
 
 
 7
 In the instant case, Local 44 argues that there were no established hiring hall procedures from which it could have deviated in the first place, and that even if such procedures existed, Local 44's departure from them was justified.
 
 
 8
 The Plumbers International pipeline section director, George Lambert, sent a letter to Scott Smith, business manager of Local 44, granting jurisdiction to Local 44 to dispatch workers and indicating the order in which such dispatches were to be made:
 
 
 9
 Due to the fact that the majority of the work awarded to Welded Construction Company is located in Local 44 jurisdiction, you have been assigned to police the jurisdiction of this project for the duration of the project agreement. However, since a portion of this project goes through Local 598 ... jurisdiction, you are requested to use qualified Local 598 members on a first call basis when all Local 44 qualified people have been dispatched.
 
 
 10
 The Board found that Lambert's letter to Smith, which indicated that Local 598 workers were to be dispatched after all available Local 44 workers had been called, was a "directive" that "established a procedure for the dispatching of ... employees" to the pipeline project. Local 44 argues that the letter was framed merely as a "request" and that it did not mandate any particular procedure by which Local 44 was to refer welders to the project.
 
 
 11
 Substantial evidence, however, supports the Board's finding that the letter did establish a procedure for the order of referrals and that all the parties understood the letter as doing so. The letter, a copy of which was sent to Local 598's business manager, Gary Barcom, specifically indicated that a portion of the pipeline project fell within Local 598's jurisdiction and that Local 598 members were to be dispatched on a "first call basis" after all Local 44 workers had been used. The fact that Barcom had been invited to attend "pre-job" conferences to discuss welder qualification requirements indicates an acknowledgement that his members were going to be utilized in the project and counters Local 44's argument that it had no obligation to dispatch Local 598 members at all.
 
 
 12
 Moreover, before leaving town the week of March 23, 1992, Local 44's Scott Smith instructed Local 44 President Bill Krels to dispatch Local 44 members first and then Local 598 members according to Local 598's availability list, and this is exactly what Krels did on March 26-27. This conduct, along with the language of the letter and the surrounding circumstances, constituted substantial evidence that clear procedures were to be followed in the dispatch of welders to the project and that the parties intended to abide by these procedures. Therefore, because sufficient evidence supported the Board's finding that there were established hiring hall procedures in place, Local 44 was obligated to show that it was legitimately justified in deviating from them.
 
 
 13
 Local 44 argues that Local 598's failure to provide a workable list gave Local 44 an objective basis for departing from the rules. Local 44 had contacted approximately ten of the welders on Local 598's list, but each one either refused to be tested because he felt unprepared, or agreed to be dispatched but then failed the test. Thus, Local 44 contends that it was justified in abandoning the list altogether. Local 44 maintains that its effort to prevent the loss of its dispatching jurisdiction over the project was a valid objective for the benefit of the membership as a whole, and that all of its actions were done in furtherance of that objective. Local 44 also claims that it had a good faith belief that all available Local 598 welders had been used and that it no longer was required to use the list. As stated in Local 44's brief, "as far as [Local 44] was concerned, the dispatching obligation relating to 598 applicants was passed to Local 598 during the weekend of March 27-28."
 
 
 14
 It is understandable that Local 44 was under a great deal of pressure to dispatch qualified welders to the project. Local 44 apparently faced a "crisis" situation when the welders on Local 598's list turned out to be unavailable or unqualified. Nevertheless, there was substantial evidence to indicate that Local 44's complete departure from the established referral procedures was not warranted. As the Board points out, Local 44 did not give the referral procedures a chance to work. Local 44 stopped using the list on March 27, after only two days of effort and after contacting only 10 of the 25 men on the list. The fact that several of those contacted had failed the welding test did not necessarily mean that the others would assuredly fail. There was also evidence that Local 598 sent six updated lists to Local 44 (although Local 44 denies ever having received them), but Local 44 unilaterally decided that it was no longer "going by any list supplied by Local 598." This supports the Board's finding of an arbitrary disregard for the established rules.
 
 
 15
 Even if Local 44 had been justified in departing from the established referral procedures, the Board was still entitled to find that Local 44 violated the Act by failing to give timely notice of the changes in the referral rules. It is well established that "[t]he failure to give timely notice of a significant change in referral procedures is a breach of a union's duty to represent job applicants fairly." Cell-Crete, 288 N.L.R.B. at 264; see also International Union of Operating Eng'rs Local 406 v. NLRB, 701 F.2d 504, 510 (5th Cir. 1983) (per curiam); United Ass'n of Journeymen & Apprentices, Local 230, 293 N.L.R.B. 315, 316 (1989).
 
 
 16
 Local 44 never notified Local 598 that it was no longer going to use the list supplied by Local 598 or that Local 598 would thereafter be responsible for referring its own qualified welders. In fact, Local 44's Scott Smith never explicitly discussed with Local 598 representatives any of the problems he had had with the list. Therefore, Local 598 members on the list had no notice that they would no longer be directly contacted for job referrals. "[I]f Local ' § change was indeed designed or intended to benefit its membership as a whole, it is reasonable to assume that it would have given timely notice of its new hiring and dispatch procedures to all hiring hall registrants." Cell-Crete, 288 N.L.R.B. at 264. Local 44 failed to notify members of a change that was "critical to potential employment," Operating Eng'rs Local Union No. 3, 305 N.L.R.B. 1111, 1116 (1992), and therefore, the Board's finding that Local 44 breached its duty of fair representation is supported by substantial evidence.
 
 CONCLUSION
 
 17
 Local 44 did not show that it had a legitimate justification for departing from the established referral rules, nor that it gave any notice of its adoption of different referral procedures. Substantial evidence supports the Board's finding that Local 44 breached its duty of fair representation in violation of Section 8(b)(1)(A) of the Act. Accordingly, we grant enforcement of the Board's order.
 
 
 18
 ENFORCEMENT GRANTED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3