840 F.2d 634
 127 L.R.R.M. (BNA) 3023, 108 Lab.Cas. P 10,370
 Lawrence MOORE and Walter F. Whelan, Jr., Plaintiffs-Appellants,
v.
BECHTEL POWER CORPORATION, The International Brotherhood of
Electrical Workers, Union Local 569, Paul
Blackwood and Wayne Lovin, Defendants-Appellees.
 No. 85-6320.
 United States Court of Appeals,
Ninth Circuit.
 Memorandum Dec. 22, 1987.
Opinion March 3, 1988.
 
 George L. de la Flor, Phin & de la Flor, San Diego, Cal., for plaintiffs-appellants.
 Donald A. Newman, Thelan, Marrin, Johnson & Bridges, and Ellen Greenstone, Levy, Goldman, Greenstone & Hubel, Los Angeles, Cal., for defendants-appellees.
 ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES
 Before SNEED and SCHROEDER, Circuit Judges, and MARQUEZ,* District Judge.
 ORDER
 The memorandum disposition filed December 22, 1987, is hereby amended and redesignated an opinion authored by Judge Sneed, per the attached opinion.
 OPINION
 SNEED, Circuit Judge:
 
 
 1
 Lawrence Moore and Walter F. Whelan appeal from a grant of summary judgment in favor of Bechtel Power Corporation; International Brotherhood of Electrical Workers, Local 569 (Union); and Paul Blackwood and Wayne Lovin, both Local 569 officials. The district court found that the Union did not breach its duty of fair representation. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 Moore and Whelan are journeyman electricians, and belong to the International Brotherhood of Electrical Workers (IBEW). On July 26, 1982, Local 569 dispatched them to work for Bechtel at the San Onofre Nuclear Generating Station (SONGS). On August 20, 1982, Moore's foreman assigned him to work in a radiation area. Moore refused, and was terminated. On August 24, 1982, Whelan was assigned to work in a chemistry lab. Whelan discovered that there were occasionally low levels of radiation in the lab, and refused to accept the assignment. As a result, Whelan's employment was terminated.
 
 
 3
 Bechtel and IBEW are signatories to the General President's Maintenance Agreement (Agreement), a collective bargaining agreement. The Agreement provides for a four-step grievance procedure. On August 30, 1982, at Moore's request, Union Representative Wes Young filed a grievance against Bechtel under the Agreement. The grievance stated that Moore was unable to carry out a work assignment in an area where radiation was present and requested that Moore be assigned to a nonradiation area. At the Step I grievance meeting between the on-site Union Representative and Moore's immediate on-site supervisor, Bechtel refused to accede to Moore's request. Acting at Moore's direction, Young arranged a Step II meeting between Ken Johnson, an International Union Representative, the Local Union Representative, and the employer's Labor Relations Manager. Moore attended the Step II meeting, which deadlocked. The parties agreed to continue to Step III, and submit the dispute to the General Presidents' Committee, which is composed of representatives of the building trades unions signatory to the Agreement. On December 15, 1982, the Committee heard the grievance. It agreed with Bechtel's position. Therefore, following the terms of the Agreement, the Union did not proceed to Step IV arbitration.
 
 
 4
 After his termination, Whelan, following a course of action parallel to Moore's, requested Young to file a grievance. Bechtel did not change its position at the Step I meeting, and Whelan asked Young to proceed to Step II. The Step II meeting was held on December 6, 1982. At the meeting, Whelan wrote a letter stating that his grievance was the same as Moore's. The meeting ended after Bechtel agreed that if Moore won his grievance, Whelan would also. At Step III, Whelan's grievance was denied.
 
 
 5
 On November 10, 1983, Moore and Whelan filed a complaint in the district court against Bechtel and Local 569. On April 9, 1984, they filed an amended complaint, adding as defendants Blackwood and Lovin. On September 10, 1985, the district court granted the defendants' motion for summary judgment, and denied the plaintiffs' motions for a jury trial and to reopen discovery as moot. The plaintiffs appealed in a timely fashion. This court affirmed the grant of summary judgment on procedural grounds, finding that the plaintiffs' cause of action was time barred by their failure to serve the complaint on the defendants within six months of the action's accrual. The Supreme Court vacated our judgment in Moore et al. v. Bechtel Power Corp. et al., --- U.S. ----, 108 S.Ct. 54, 98 L.Ed.2d 19 (1987), and remanded the case to us. We now consider the case on its merits.
 
 II.
 STANDARD OF REVIEW
 
 6
 We review the district court's grant of summary judgment de novo, examining the record in the light most favorable to the nonmoving party. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986). We must determine whether there are any genuine issues of material fact and whether the district court correctly applied the law. Id.
 
 III.
 DISCUSSION
 
 7
 Section 9(a) of the National Labor Relations Act, 29 U.S.C. Sec. 159(a) (1982), states:
 
 
 8
 Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment
 
 
 9
 ....
 
 
 10
 The Supreme Court has said, "The undoubted broad authority of the union as exclusive bargaining agent in the negotiation and administration of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation." Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 368, 11 L.Ed.2d 370 (1964). A union breaches this duty only when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).
 
 
 11
 Unions have broad discretion to act in what they perceive to be their members' best interests. Ford Motor Co. v. Huffman, 345 U.S. 330, 337-39, 73 S.Ct. 681, 685-87, 97 L.Ed. 1048 (1953). This court has construed the unfair representation doctrine in a manner designed to protect that discretion. Johnson v. United States Postal Serv., 756 F.2d 1461, 1465 (9th Cir.1985). In our application of this doctrine, we ask first whether the act in question involved the union's judgment, or whether it was "procedural or ministerial." Peterson v. Kennedy, 771 F.2d 1244, 1254 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); Galindo v. Stoody Co., 793 F.2d 1502, 1514 (9th Cir.1986). If it is a union's judgment that is in question, as it is in this case, the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith. Arbitrariness alone would not be enough. Only when the challenged conduct was procedural or ministerial does arbitrariness become controlling. Peterson, 771 F.2d at 1254-55. See also Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270 (9th Cir.1983).
 
 
 12
 Moreover, mere negligence is not arbitrariness. The union must have acted in "reckless disregard" of the employee's rights. Johnson, 756 F.2d at 1465; Castaneda v. Dura-Vent Corp., 648 F.2d 612, 618 (9th Cir.1981). More particularly, we have said:
 
 
 13
 In all cases in which we found a breach of the duty of fair representation based on a union's arbitrary conduct, it is clear that the union failed to perform a procedural or ministerial act, that the act in question did not require the exercise of judgment and that there was no rational and proper basis for the union's conduct.
 
 
 14
 Peterson, 771 F.2d at 1254. Finally, the union only breaches its duty of fair representation when its conduct prejudices a strong interest of the employee. Galindo, 793 F.2d at 1514.
 
 
 15
 Appellants rely on the following circumstances to demonstrate the Union's allegedly arbitrary and bad faith handling of their grievances: (1) the Union allegedly interpreted provisions of the Agreement in favor of Bechtel whenever possible; (2) the Union on-site representative allegedly did not want to pursue appellants' grievances; (3) the Union allegedly failed to give them timely notice of the Step I meeting; (4) the Union did not support their requests to have the Step II meetings tape-recorded; (5) there was "camaraderie" between the Union officials and the representatives from Bechtel at Moore's Step II meeting; (6) Union Representative Ken Johnson allegedly railroaded Whelan into consolidating his grievance with Moore's; (7) after the Step II meetings, the Union Representative sent a negative evaluation of appellants' claims to the General Presidents' Committee; (8) the Union missed several time limits at the Step III level; and (9) the appellants were not promptly informed of the Step III decision.
 
 
 16
 Most of these examples involve the Union's judgment. Only the failure to provide adequate notice of the Step I meetings, the missed time limits, and the tardy notification of the Step III decision are omissions of ministerial acts, and thus might support appellants' claim that the Union acted arbitrarily. In Evangelista v. Inlandboatmen's Union, 777 F.2d 1390 (9th Cir.1985), this court held that a union does not breach its duty of fair representation by failing to give a union member notice of a grievance hearing "where the issue is the proper construction of a collective bargaining agreement." Id. at 1397. Appellants do not allege that the missed time limits and late notification prejudiced their grievances in any way. See Galindo v. Stoody Co., 793 F.2d 1502, 1514 (9th Cir.1986).
 
 
 17
 Several of appellants' other allegations boil down to the assertion that the Union simply did not believe that appellants had a strong case. To agree with Bechtel's interpretation of the Agreement does not indicate bad faith. Nor does a disagreement between a union and an employee over a grievance, standing alone, constitute evidence of bad faith, even when the employee's grievance is meritorious. Vaca v. Sipes, 386 U.S. 171, 194-95, 87 S.Ct. 903, 918-19, 17 L.Ed.2d 842 (1967).
 
 
 18
 The appellants point to the failure of the Union representatives to support their request to tape-record the Step II meetings and the "camaraderie" between the Union representatives and the Bechtel representatives at Moore's Step II meeting as evidence of the Union's "predisposition." The Union's desire not to tape-record the meetings is not evidence of bad faith. Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d 1228, 1242 (2d Cir.1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980) (grievance meetings are usually not recorded because "negotiators realize that the bargaining process could easily be stymied if each of the multiple, heterogeneous constituencies they represent are apprised of the details of the process"). According to Moore's affidavit, the camaraderie in question consisted of "small talk," a discussion about travel, and the Union representatives' sending out for sandwiches without asking Moore whether he would like one. Excerpt of Record at 636. These acts are not evidence of bad faith.
 
 
 19
 Finally, the appellants argue that Johnson coerced Whelan into ending his Step II meeting early by consolidating his claim with Moore's. In his deposition Whelan described this "coercion" to consist of Johnson telling him that because nothing would be settled at Step II they might as well go to Step III. This is neither coercion nor evidence of bad faith or arbitrary behavior.
 
 
 20
 The fact is that no evidence supports the charge that the Union treated the appellants' grievances arbitrarily or in bad faith. The Union pursued the appellants' grievances through the third step of a four-step procedure, and remained in an adversary relationship with Bechtel until the grievance was resolved at Step III. Unions do not have an absolute duty to take every grievance to arbitration. Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967).
 
 
 21
 There exists no genuine issue of material fact with respect to whether the Union breached its duty of fair representation. Appellants, therefore, are not entitled to proceed against Bechtel. Vaca, 386 U.S. at 186, 87 S.Ct. at 914; Franklin v. Southern Pac. Transp. Co., 593 F.2d 899, 901 (9th Cir.1979).
 
 
 22
 The district court's grant of summary judgment was proper.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Alfredo C. Marquez, United States District Judge, District of Arizona, sitting by designation