Ronald BURKEVICH, Gary R. Gale, B. David Gates III, Karl Maerzluft, and Glenn Kroshus, Plaintiffs–Appellants,

v.

AIR LINE PILOTS ASSOCIATION, IN-TERNATIONAL, Defendant–Appellee.

No. 88–3993.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 1989.

Decided Jan. 24, 1990.

See also, D.C., 113 F.R.D. 644.

John H. Bradbury, Bradbury, Bliss and Riordan, Anchorage, Alaska, for plaintiffs-appellants.

R. Russell Bailey, Washington, D.C., for defendant-appellee.

Before WALLACE, PREGERSON and ALARCON, Circuit Judges.

PREGERSON, Circuit Judge:

Ronald Burkevich, Gary R. Gale, B. David Gates III, Karl Maerzluft, and Glenn Kroshus, a group of pilots ("individual pilots") employed by Wien Air Alaska, Inc. ("Wien") sued their union, the Air Line Pilots Association, International ("ALPA") for breach of the duty of fair representation. The individual pilots asked the district court to certify them as class representatives. The court denied the request. After substantial discovery, ALPA moved for summary judgment on the individual pilots' claims for breach of the duty of fair representation. The district court granted ALPA's motion as to all claims. In addition, the district court decided that the statute of limitations barred one claim. This timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

On November 2, 1984, Wien, as part of its plan to reorganize the airline, announced its intention to furlough pilots and temporarily shut down the airline without complying with provisions of the Railway Labor Act, 45 U.S.C. §§ 151–188, requiring it to negotiate with the union before changing working conditions.[1] On November 23, 1984, ALPA obtained a preliminary injunction in district court prohibiting Wien from furloughing pilots and requiring Wien to continue to operate the airline until it complied with the Railway Labor Act. On November 28, 1984, Wien filed a petition in bankruptcy court for reorganization under Chapter 11 of the Bankruptcy Act of 1978 ("Bankruptcy Code"), 11 U.S.C. §§ 1101–1174. Wien's Chapter 11 filing automatically stayed the district court's preliminary injunction. See 11 U.S.C. § 362(a)(1). Wien then shut down the airline.

During the Chapter 11 proceedings, ALPA filed several proofs of claims against Wien on behalf of the pilots *as a group*. One group claim was for $4.8 million for damages occurring before Wien filed its reorganization petition ("prepetition damages").[2] Another group claim was for $31 million for damages arising out of the shutdown of the airline after Wien filed its reorganization petition ("shutdown damages").[3] In addition, ALPA filed proofs of claims for prepetition and shutdown damages on behalf of the pilots *as individuals*.

Wien and another company—W. A. Holdings, Inc.—presented competing reorganization plans to the bankruptcy court. Both

---

**1.** A major purpose of the Railway Labor Act is "[t]o avoid any interruption to commerce or to the operation of any carrier engaged therein [by] provid[ing] for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions." 45 U.S.C. § 151a(1), (4). Accordingly, a carrier may not *change rates of pay, rules, or working conditions* without first conferring with its employees and attempting to reach agreement on the changes. See 45 U.S.C. § 152, Seventh; 45 U.S.C. § 156.

**2.** Pre-petition damages were based on wages, severance pay, and vacation pay not paid to the pilots before the shutdown of the airline. ALPA originally sought approximately $6 million in pre-petition damages, but later reduced the claim to $4.8 million.

**3.** Shutdown damages were calculated by adding up the wages and benefits the pilots would have earned had Wien continued to operate from the day it shutdown the airline in November 1984 until December 1986 when the collective bargaining agreement expired. ALPA originally sought $34.3 million in shutdown damages, but later reduced the claim to $31 million.

plans required ALPA and the individual pilots to waive their claims for shutdown damages. ALPA entered into negotiations with Wien and as a result Wien agreed to modify its reorganization plan to include the resumption of limited flight operations and the employment of pilots. Wien also agreed to pay the $4.8 million in pre-petition damages. In exchange, ALPA agreed to support Wien's plan and waive the group claim for $31 million in shutdown damages. On March 18, 1985, Wien and ALPA signed a letter of intent memorializing their agreement.

The individual pilots—all supporters of the W. A. Holdings plan—retained counsel and on March 19, 1985, sent a letter to ALPA demanding that ALPA renegotiate with Wien to preserve the group shutdown damages claim. Attached to this letter was a draft complaint against ALPA for breach of the duty of fair representation which the individual pilots planned to file if ALPA did not revoke its waiver of the group claim.

By letter dated March 29, 1985, ALPA formally informed all ALPA-represented pilots of its decision to support Wien's reorganization plan and withdraw the group shutdown damages claim if the bankruptcy court confirmed Wien's plan. To prevent delays in implementing the reorganization plan, ALPA also urged all pilots to withdraw their individual shutdown damages claims. ALPA, however, told the pilots that it would not settle their individual claims without their express authorization, and ALPA repeatedly emphasized that its settlement of the group shutdown damages claim did not constitute a settlement of the individual claims. In addition, ALPA informed the pilots that it could not represent any pilot who wished to sue Wien for shutdown damages because doing so would undermine ALPA's agreement with Wien. Attached to the letter was a form that the pilots could fill out either authorizing or not authorizing ALPA to waive their individual shutdown damages claims. Sixty-three pilots supported the Wien plan and thus authorized ALPA to withdraw their claims, 34 pilots—including all appellants—directed ALPA not to waive their claims, and 85 pilots did not respond.

On April 16, 1985, the individual pilots, through their own lawyers, attempted to pursue their individual shutdown damages claims against Wien. But the bankruptcy court decided that the individual pilots lacked standing because only ALPA, as the collective bargaining agent, could bring claims against Wien.[4] The bankruptcy court then confirmed Wien's reorganization plan, which included ALPA's waiver of the group shutdown damages claim.

The reorganized Wien ("New Wien") paid the pilots the $4.8 million as promised, but started to have problems shortly after confirmation of the plan. These problems allegedly included delays in FAA certification, failure to account for corporate income, and failure to pay pilot wages. In October 1985, New Wien shut down the airline and filed a petition for reorganization under Chapter 11 of the Bankruptcy Code.[5]

The individual pilots instituted this suit on October 10, 1985. On appeal, they contend that the district court erred in denying their request for class certification and in granting summary judgment for ALPA. More specifically, the individual pilots argue that the statute of limitations does not bar one of their claims, that ALPA breached the duty of fair representation, and that ALPA's breach caused their injuries.

---

4. The individual pilots appealed the bankruptcy court's decision that they did not have standing to the district court. The district court affirmed the bankruptcy court's decision on October 20, 1985. We affirmed the district court on January 13, 1989. *Wien Air Alaska, Inc. v. Bachner,* 865 F.2d 1106, 1110–1111 (9th Cir.1989).

5. Although New Wien ostensibly sought to reorganize and thus remain a viable business, neither New Wien nor any other party had submitted a reorganization plan as of August 1989. Consequently, on August 24, 1989, the bankruptcy court ordered New Wien to show cause why the Chapter 11 petition should not be dismissed or converted to a petition for liquidation under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–766. The court scheduled a hearing on the order to show cause for October 16, 1989, but continued it to April 16, 1990, at the request of New Wien's unsecured creditors.

ALPA moves for attorneys' fees and double court costs pursuant to Fed.R.App.P. 38.

## DISCUSSION

### I. Introduction

We read the individual pilots' complaint against ALPA to allege six separate claims for breach of the duty of fair representation: (1) ALPA broke its "promise" not to settle the individual pilots' claims for shutdown damages without their express authorization; (2) ALPA refused to represent the individual pilots on their individual shutdown damages claims at Wien's reorganization plan confirmation hearing; (3) ALPA deceived the individual pilots by knowingly misrepresenting that ALPA's waiver of the group shutdown damages claim did not constitute a settlement of the individual shutdown damages claims; (4) ALPA decided to support Wien's reorganization plan without adequate investigation; (5) ALPA agreed to support the Wien plan without soliciting the views of the pilots; and (6) an ALPA custodian [6] represented the pilots in bad faith because of conflicts of interest.

### II. Breach of the Duty of Fair Representation

#### A. Standard of Review

We review de novo the district court's grant of summary judgment, examining the evidence in the light most favorable to the nonmoving party. *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th Cir. 1988). We must determine whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact. *Id.* Specifically, whether a union's conduct amounted to a breach of the duty of fair representation presents a mixed question of law and fact that we review de novo.

*Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir.1986).

### B. Analysis

■ While unions have broad authority to act on behalf of their members, that authority is " 'accompanied by a responsibility of equal scope, the responsibility and duty of fair representation.' " *Moore,*. 840 F.2d at 636 (quoting *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964)). This court engages in a two-step analysis to determine whether a union has breached the duty of fair representation. First, we must decide whether the alleged union misconduct "involved the union's judgment, or whether it was 'procedural or ministerial.' " *Id.* (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); *Galindo*, 793 F.2d at 1514). Second, if the conduct was procedural or ministerial, then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith. *Id.* However, if the conduct involved the union's judgment, then "the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith." *Id.*

#### 1. Whether ALPA Breached the Duty of Fair Representation by Settling the Individual Pilots' Claims for Shutdown Damages Without Their Express Authorization.

■ The individual pilots contend that ALPA breached the duty of fair representation by breaking a promise not to settle their individual shutdown damages claims without their express authorization. They argue that ALPA in effect settled their individual claims when it settled the group shutdown damages claim and refused to litigate the individual claims.

ALPA's decisions to settle the group shutdown damages claim and to refuse to

---

**6.** The ALPA representatives involved in this suit are referred to as "custodians." Three custodians, Raymond Lysen, Alan Dixon, and Gary Mercer, were appointed by ALPA to represent the Wien pilots after Wien petitioned for reorganization. Until that time, the pilots were represented by officials elected by the pilots. The replacement of the elected officials by the appointed custodians is mandated by ALPA's Constitution and By–Laws. For this reason, apparently, the individual pilots do not contend that ALPA's appointment of the custodians constituted a breach of the duty of fair representation.

litigate individual claims involved the exercise of ALPA's judgment. Thus, ALPA breached the duty of fair representation only if these decisions were made discriminatorily or in bad faith.

The individual pilots contend that it was "patent bad faith [for ALPA to do] exactly what it said it would not do." ALPA, however, argues that it did not act contrary to its stated intentions. Moreover, ALPA contends that its decisions to settle the group claim and to refuse to litigate individual claims were made in good faith. We conclude that the undisputed facts support ALPA's arguments.

In the letter dated March 29, 1985, ALPA informed all ALPA-represented pilots that it had reached an agreement with Wien whereby Wien agreed to pay the $4.8 million in pre-petition damages and to modify its reorganization plan to include the resumption of limited flight operations and the employment of pilots. In exchange, ALPA agreed to waive the pilots' group claim for $31 million in shutdown damages. In the letter, ALPA stated that its settlement of the group shutdown damages claim did not preclude individual pilots from pursuing such claims on their own. ALPA did, however, urge the pilots to withdraw their individual claims to prevent delay in confirmation of Wien's plan. Specifically, ALPA stated:

> While it is the position of ALPA that the *ALPA v. Wien* lawsuit, and all claims based on damages resulting from the shutdown of operations, are properly brought by ALPA as the authorized collective bargaining representative of the entire pilot group, *ALPA has not undertaken to and will not settle any individual's claim without his express authorization.*

(Emphasis in original.) In addition, ALPA emphasized that it could not litigate shutdown damages claims on behalf of individual pilots.

Nothing in the record contradicts the clear import of ALPA's statements: ALPA in good faith determined that the individual claims had some independent legal existence, and that ALPA could waive the pilots' group claim for shutdown damages without precluding individual pilots' pursuit of individual shutdown damages claims. We conclude, therefore, that ALPA's statement in its March 29 letter that it would not settle individual shutdown damages claims without authorization was merely an expression of ALPA's intention to allow the individual pilots to proceed with their individual claims without interference or support from ALPA.

Contrary to the individual pilots' contention, ALPA's statement cannot be read as a promise to delegate ALPA's authority to settle the *group* shutdown damages claim to individual pilots. Rather, ALPA's statement—which expressly included an assertion of its right to settle *all* claims based on shutdown damages—can only be read as a much more limited promise to delegate ALPA's authority to settle *individual* claims to individual pilots. As we stated in a related case, "[i]n negotiating the settlement [with Wien] and presenting it to the bankruptcy court, ALPA expressly chose to wield its bargaining power. This action is unequivocal evidence that ALPA did not intend to waive its statutory right to represent its members [as a group]." *Bachner*, 865 F.2d at 1110.

On April 16, 1985, the individual pilots—represented by their own counsel—attempted to assert their individual shutdown damages claims against Wien at Wien's reorganization plan confirmation hearing in bankruptcy court. The bankruptcy court, however, decided that only ALPA—and not the individual pilots—had standing to assert individual pilot claims. Consistent with its expressed intention, ALPA did not pursue the individual pilots' shutdown damages claims. The bankruptcy court subsequently confirmed Wien's reorganization plan, which included ALPA's waiver of the group shutdown damages claim.

The individual pilots distort both the carefully drawn statement in ALPA's March 29 letter and subsequent developments in their assertion that ALPA broke its promise not to settle the individual pilots' shutdown damages claims without authorization when it settled the group shut-

down damages claim and refused to provide lawyers to those pilots who wished to pursue claims against Wien individually. The bankruptcy court's decision to deny standing to the individual·pilots (a decision upheld by this court in *Bachner*, 865 F.2d at 1110–1111) prevented the individual pilots from exercising the limited authority delegated to them by ALPA. Before that ruling, both ALPA and the individual pilots had damages claims, and both apparently believed in good faith that the individual pilots would have standing to assert their own claims. The bankruptcy court's decision—not ALPA's—precluded the individual pilots from pursuing shutdown damages claims on their own. No promise was broken by ALPA.

ALPA also argues that its decisions to waive the *group* claim and to refuse to pursue individual claims were made in good faith. In the March 29 letter, ALPA explained that it believed waiving the group claim for shutdown damages was wise since litigation of the claim, which might ultimately prove unsuccessful, might delay or prevent confirmation of a reorganization plan, delay payment of the undisputed $4.8 million pre-petition damages claim, and delay New Wien's flight operations. ALPA further explains on appeal that it decided not to pursue individual claims because doing so would have undermined ALPA's agreement with Wien. These reasons—even if faulty—do not indicate that ALPA's decisions to waive the group claim and to refuse to litigate individual claims were made discriminatorily or in bad faith.

Consequently, we hold as a matter of law that ALPA did not breach the duty of fair representation and affirm the district court's grant of summary judgment as to this claim.

2. *Whether ALPA Breached the Duty of Fair Representation by Refusing to Represent the Individual Pilots at the Bankruptcy Hearing on the Individual Shutdown Damages Claims.*

■ The individual pilots contend that ALPA breached the duty of fair representation when it failed to represent them on the individual shutdown damages claims at the bankruptcy hearing.

This decision involved ALPA's exercise of judgment. Therefore, if ALPA exercised its judgment discriminatorily or in bad faith, then ALPA breached the duty of fair representation.

As stated above, ALPA decided not to represent the individual pilots on their shutdown damages claims because to do so would have undermined ALPA's agreement with Wien. Furthermore, ALPA believed that asserting any claim for shutdown damages (whether on behalf of the group or an individual) would not have been in the best interests of its members. The reasons for ALPA's position on the shutdown damages claims do not reflect any evidence of bad faith or discrimination. Thus, as to this claim, we affirm the district court's grant of summary judgment on the ground that ALPA did not breach the duty of fair representation.

3. *Whether ALPA Breached the Duty of Fair Representation by Knowingly Misrepresenting that ALPA's Waiver of the Group Shutdown Damages Claim Did Not Constitute a Settlement of the Individual Shutdown Damages Claims.*

■ The individual pilots argue that ALPA knew that they could not pursue the claims on their own even before the bankruptcy court ruled that the individual pilots lacked standing. They contend that ALPA's statement in the March 29 letter that ALPA's settlement of the group claim was not a settlement of any individual's claim constituted a deliberate deception which breached the duty of fair representation. But the individual pilots have pointed to no evidence which supports this argument. In their reply brief, the individual pilots cite deposition testimony by Gary Dixon, an ALPA custodian, in support of their contention. The deposition testimony fails to support the contention. In fact, even when viewed in the light most favorable to the individual pilots, Dixon's testimony establishes that ALPA representatives honestly believed that individual shutdown damages claims could be pursued

notwithstanding ALPA's waiver of the group shutdown damages claim.

Moreover, whether the individual pilots could pursue the shutdown damages claims on their own (i.e., whether they would or would not have standing) was not clear at least until the bankruptcy court decided the question. The individual pilots appealed the bankruptcy court's decision, and uncertainty actually surrounded the standing issue until this court affirmed on January 13, 1989. *See Bachner*, 865 F.2d at 1110–1111.

Because the individual pilots have offered no evidence to support their thesis that ALPA deliberately deceived the pilots, we affirm the district court's grant of summary judgment as to this claim on the ground that ALPA did not breach the duty of fair representation.

4. *Whether ALPA Breached the Duty of Fair Representation by Deciding to Support Wien's Plan for Reorganization Without Adequate Investigation.*

■ The individual pilots contend that ALPA breached the duty of fair representation by deciding to support Wien's reorganization plan without adequate investigation. ALPA's decision clearly involved the exercise of judgment. Thus, if the decision was undertaken discriminatorily or in bad faith, then ALPA breached the duty of fair representation.

In support of their contention that ALPA failed to investigate Wien's plan adequately, the individual pilots allege that ALPA made its decision "without a business plan for New Wien, without a guarantee of money ... and without ascertaining the value of Wien's logistical contributions to the operation." In effect, the individual pilots are accusing ALPA of exercising poor judgment.

Poor judgment—standing alone—does not constitute a breach of the duty of fair representation. What must be shown is that the judgment was exercised discriminatorily or in bad faith. In this case, there is no evidence that the union's decision to support the reorganization was anything but a judgment call, perhaps poorly made. Accordingly, we affirm the district court's grant of summary judgment as to this

claim on the ground that ALPA did not breach the duty of fair representation.

5. *Whether ALPA Breached the Duty of Fair Representation by Agreeing to Support the Wien Plan Without Consulting the Individual Pilots.*

■ The individual pilots argue that ALPA breached the duty of fair representation by agreeing to support the Wien reorganization plan without soliciting their views. At the bankruptcy hearing on April 16, 1985, ALPA conceded that it did not solicit its members' views before reaching agreement with Wien. However, in its brief on appeal, ALPA contends that it "discussed [the reorganization plans] ... with pilots at pilot meetings" before reaching agreement with Wien.

While ALPA's new position creates a factual dispute, we need only reverse a grant of summary judgment if there are genuine issues of *material* fact. For purposes of deciding if ALPA breached the duty of fair representation in this case, it is immaterial whether or not ALPA consulted with its members before reaching agreement with Wien.

Assuming that ALPA did not consult with its members, its decision not to do so would be a matter of judgment, and would not constitute a breach of the duty of fair representation if not made discriminatorily or in bad faith. ALPA has explained that it does not consult with its members prior to reaching agreement because "[y]ou don't go out and tell people what you're going to negotiate for in an open meeting so the other side knows what it is that's going to be presented." This plausible explanation is not evidence of discrimination or bad faith. Therefore, as to this claim, we affirm the district court's grant of summary judgment on the ground that ALPA has not breached the duty of fair representation.

6. *Whether ALPA Breached the Duty of Fair Representation Because an ALPA Custodian Represented the Pilots in Bad Faith Due to Conflicts of Interest.*

■ The individual pilots finally contend that ALPA Custodian Raymond Lysen rep-

resented the pilots in bad faith due to conflicts of interest and that, therefore, ALPA breached the duty of fair representation. Specifically, the individual pilots allege that (1) Lysen was seeking a job with Alaska Airlines, while acting for ALPA, and (2) Lysen "sold out" the pilots in order to get a position on the board of directors of New Wien. If these allegations were true, then Lysen's actions would probably reflect bad faith. However, the individual pilots have not supported either allegation with any evidence. Accordingly, we conclude that ALPA has not breached the duty of fair representation and affirm the district court's grant of summary judgment as to this claim.

### III. *Attorneys' Fees and Court Costs*

ALPA requests attorneys' fees and double court costs pursuant to Rule 38, Fed.R. App.P. Under Rule 38, we have authority to assess double costs and/or attorneys' fees as sanctions for filing frivolous appeals. *See* 28 U.S.C. § 1912; *Kelley v. International Brotherhood of Electrical Workers*, 803 F.2d 516, 519 (9th Cir.1986). A frivolous appeal is "wholly without merit." *Id.; see also Matter of Hawaii Corp.*, 796 F.2d 1139, 1144 (9th Cir.1986); *Libby, McNeill, and Libby v. City National Bank*, 592 F.2d 504, 514–15 (9th Cir.1978). Although we disagree with the individual pilots' contentions, we cannot say they are "wholly without merit." Consequently, we do not view this as an appropriate case for sanctions.

For the reasons stated, the district court's grant of summary judgment is AFFIRMED.[7]

---

7. Because we hold that ALPA did not breach the duty of fair representation, we do not reach the causation and class certification issues.