**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL DEMETRIS; WILLIAM
BURKE; DANIEL BURSTEIN;
PATRICK COLLINS; RICHARD
GORGAS; PAUL HERFEL; ROBERT
MARINI; ABDUL MORANI; PAUL
MORRONE; ROBERT PALACEK,
individually and on behalf of all
others similarly situated,
            *Plaintiffs-Appellants*,

v.

TRANSPORT WORKERS UNION OF
AMERICA, AFL-CIO,
            *Defendant-Appellee.*

No. 15-15229

D.C. No.
3:13-cv-05566-VC

MARK LETBETTER; MIKE
MCDONALD; RICK ARNEGARD;
WILLIAM BELL; WILLIAM BLACK;
LONNIE BRADBURY; JOHN
BREEDEN; ROGER BROWN; SCOTT
BROWN; JOHN BYNUM; MIKE
CODY; JOHN CRAWFORD; BILLIE
CUMMINS; GEORGE DANKER;
DON DRAPER; MICHAEL ELMORE;
WADE FAUST; JERRY FRAZIER;
KEVIN GORREMANS; MARY
GORREMANS; JAMES HAYDEN;
BRENDA HIGLEY; RANDY
HOLLAND; JIM BOB JACKSON;
ALAN KEITH; EARL KUPPINGER;
SOREN LOHMAR; DEBORAH
MCDANIEL; JOHNNY MCDANIEL;
MIKE MCNAMARA; STEVE NUNN;
MIKE REYES; GEORGE
RODRIGUEZ; MIKE SHARP; JERRY
SHUPE; CURTIS SIMER; ROBERT
SOMMERS; RONALD SWAN;
TERRANCE THOMAS; BILL
THORSON; JIM TROSKEY; JAMES
WALL; LARRY WEBER;
CHOKUSHIN URASAKI; STEVE
ABSHIER; RALPH BACON; RONNIE
BERTRANG; TRAICE BRYANT;
DAN BURKE; KEVIN CALMAN;
DONALD CAUDLE; JERRY
COLLARD; DOUG CREEKMORE;
HUGH COOPER; BARBARA
DEJEAR; BRYAN DESHAZO; LIDIO

No. 15-15529

D.C. No.
3:14-cv-04075-VC


AMENDED
OPINION

A. DOBRICH; DAVID ELDER; JOHN ELLER; MIKE ELLER; NED ELZO; RON ENGLES; DONALD FARRIS; ROBERT FLYNN; RANDY FORRESTER; JESSE FOSTER; STEVE FREGARA; PAUL GOULET; MARION GREENWALT; PHIL HALLMAN; MCKAYLA HARPER; SCOTT HERMANSON; LARRY HOLMES; ROGER KEMP; DANIEL KITCHENS; LARRY LAWSON; JACK LOFGREN; PATRICE MANNS; EDWARD W. MARRACCINI; FARREN MAYFIELD; GAIL MAYFIELD; GREG MCBRIDE; FRANK MEFFORD; KEN MILLER; DANNY MOORE; GERALD MURRAY; JAMES POTTEBAUM; JOHN REED; ABRAHAM REICHMAN; SHARON RITTER; BEN ROUNDTREE; GARY RUNYON; MARY RUNYON; ROGER SCHULTZ; TIM SISNEY; JOSEPH W. SMITH; RONALD SMITH; STEVE ULLRICH; SUSAN VIRDELL; MITCH WALLACE; TERRY WALLS; KENNETH WARREN; ERIC WHALEY; RAY WHITE; GLENDA WILKERSON; MIKE WILLIAMS; DON WOODRICH; JOHNNY YEARY; SAM YORK; STEVEN JONES, on

behalf of themselves and all
others similarly situated,
                *Plaintiffs-Appellants*,

ROY HAILE,
                *Petitioner-Appellant*,

                v.

LOCAL 514, TRANSPORT
WORKERS UNION OF AMERICA;
TRANSPORT WORKERS UNION OF
AMERICA,
                *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Vince G. Chhabria, District Judge, Presiding

Argued and Submitted December 13, 2016
San Francisco, California

Filed May 22, 2017
Amended July 5, 2017

Before: Diarmuid F. O'Scannlain, Ronald M. Gould,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Labor Law

The panel filed an amended opinion affirming the district court's dismissal of two consolidated actions brought under the Railway Labor Act, in which union members alleged that a union breached the duty of fair representation in the decision to distribute the proceeds of a bankruptcy settlement to all of its members unevenly.

American Airlines, Inc. and American Eagle Airlines, Inc. filed for Chapter 11 bankruptcy and negotiated new collective bargaining agreements with Transport Workers Union of America, AFL-CIO, which represented mechanics, fleet service workers, and other laborers. The new agreements cut pension and medical benefits for union members and granted the union a stake in the equity that would be granted to unsecured creditors in the bankruptcy. The union and American also negotiated an early separation program whereby more senior union members could choose voluntarily to leave American in exchange for lump-sum cash payments.

Union members who took advantage of the early separation program alleged that the union breached its duty of fair representation by excluding them from the bulk of the equity distribution. The panel held that there was no breach of duty because the union's conduct was not arbitrary, discriminatory, or in bad faith.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael A. Caddell (argued), Cynthia B. Chapman, and Amy E. Tabor, Caddell & Chapman, Houston, Texas, for Plaintiffs-Appellants.

Connie K. Chan (argued) and Stephen P. Berzon, Altshuler Berzon LLP, San Francisco, California; Richard Edelman, Mooney Green Saindon Murphy and Welch PC, Washington, D.C.; for Defendant-Appellee Transport Workers Union of America, AFL-CIO.

Teague P. Patterson, Beeson Tayer & Bodine APC, Oakland, California; Caroline B. Lapish, Norman Wohlgemuth Chandler Jeter Barnett & Ray, Tulsa, Oklahoma; for Defendant-Appellee Local 514, Transport Workers Union of America.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a labor union's decision to distribute the proceeds of a bankruptcy settlement to all of its members unevenly violates its duty of fair representation.

I

A

American Airlines, Inc., and American Eagle Airlines, Inc. (collectively "American") filed for Chapter 11 bankruptcy in November of 2011. As part of its reorganization process, American sought to reject and to renegotiate its collective bargaining agreements. The Transport Workers Union of America, AFL-CIO ("TWU") represented mechanics, fleet service workers, and other laborers at American. American presented TWU with a new, proposed labor agreement on February 1, 2012.

1

After a series of negotiations, TWU agreed to new collective bargaining agreements that drastically cut pension and medical benefits for its members. Specifically, TWU: (1) made scope-of-the-work concessions to American regarding outsourcing and work-rules; (2) gave up non-accrued pension benefits; (3) gave up certain life insurance benefits and access to jointly-funded medical trust accounts; (4) agreed to release various pre-petition claims and grievances against American in exchange for a 3.1% stake in the equity that eventually would be granted to unsecured

creditors as part of American's bankruptcy (such equity would also represent compensation for the scope and pension concessions won by American); and (5) agreed to release two grievances—referred to by the parties as the 29(d) grievances—as part of the consideration for the equity. In addition to surrendering the share in the equity, American agreed to raises in base-pay for TWU members as well as to a 401(k) program incorporating employer contributions.

2

TWU and American also entered into a "Me Too" agreement wherein American pledged to seek similar concessions from other labor groups. American also pledged to "discuss and agree upon a proportionate reduction in projected labor cost savings" with TWU if it failed to achieve similar concessions from other labor groups. This agreement eventually resulted in American awarding TWU an additional 1.7% of the equity given to unsecured creditors, bringing TWU's total stake to 4.8%.

In order to prevent mandatory layoffs for TWU members, TWU and American also negotiated an "Early Separation" program whereby more senior TWU members could choose voluntarily to leave American in exchange for lump-sum cash payments. Depending on seniority and contractual protections, TWU members who chose to participate in Early Separation could leave with between $5,000 and $22,500 in addition to regular severance pay, unused vacation pay, and an additional two-weeks' compensation.

3

The bankruptcy court approved the new collective bargaining agreements negotiated by American and TWU, which went into effect in September 2012. Members could opt for Early Separation in September and October of 2012 but not thereafter.

TWU formed a committee and retained a financial and economic advisor to determine the best method of distributing the equity in April of 2013, two months after American agreed to merge with US Airways Group, Inc., and the value of the equity became more discernable. The committee circulated its proposed distribution plan to TWU members in June and July of 2013.

a

The draft plan awarded a share of equity to members employed at American during a period beginning on November 29, 2011, and ending on July 26, 2013. Other than equity set aside to settle the 29(d) grievances, the plan excluded all members who took advantage of the Early Separation program from receiving any substantial portion of the equity. After receiving feedback from members, the committee voted to adopt the proposed plan on July 16, 2013. TWU's governing President's Council then approved the plan, and it became final and binding after TWU's president refused to exercise veto power. Equity distributions began in December 2013.

B

Before us are two consolidated, putative class-actions in which TWU members who took advantage of the Early Separation program allege that TWU breached its duty of fair representation by excluding them from the bulk of the equity distribution. All of the named plaintiffs in these consolidated appeals allege that they were employed by American and represented by TWU during American's bankruptcy, and all of the named plaintiffs took advantage of Early Separation. Collectively, these plaintiff-appellants are referred to as "Retirees." Because all of the Retirees opted for Early Separation, none received a share of the equity other than the portion set aside to compensate members for the settling of the 29(d) grievances.

1

In appeal No. 15-15229, Daniel Demetris and other Retirees had filed a duty of fair representation claim against TWU in the Northern District of California in December of 2013. A related case was filed the following month in the Northern District of Texas, but such action was dismissed and the lead plaintiff joined to the first action by the consent of the parties. In appeal No. 15-15529, Mark Letbetter and other Retirees had filed a similar action in Oklahoma state court against Local 514, Transport Workers Union of America and Transport Workers Union of America, AFL-CIO (Local 514), but the case was removed to federal court before being transferred to the Northern District of California in September of 2014. Both cases were assigned to the same district court judge and are now consolidated before us.

2

On February 4, 2015, the district court dismissed the Demetris duty of fair representation claims, finding such allegations implausible. The district court then dismissed the similar Letbetter claims in a single-page order on February 20, 2015, noting that Letbetter and other Retirees agreed that the rationale employed by the court in the Demetris case applied with equal force to their own duty of fair representation claims. This timely appeal followed.[1]

II

On appeal, Retirees argue that the district court erred in dismissing their duty of fair representation claims because TWU's equity distribution scheme was (1) arbitrary, (2) discriminatory, and (3) made in bad faith.

A

A union's duty of fair representation grows from its statutory right to exclusive representation. Because a union has exclusive statutory authority to represent its members, it has a corresponding legal obligation "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). This duty adheres to unions governed by the Railway Labor Act no less than to unions

---

[1] In response to an unopposed motion by the appellants, we consolidated the appeals on April 7, 2015. On appeal, Local 514 has chosen to join in and incorporate by reference all arguments made by TWU.

governed by the National Labor Relations Act. *Id*.; *see also Steele v. Louisville & N.R. Co*., 323 U.S. 192, 202–03 (1944).

A union breaches its duty of fair representation "when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild*, *Inc.*, 525 U.S. 33, 44 (1998). Plaintiffs bear the burden of proving that a union breached such duty. *Beck v. United Food & Commercial Workers Union*, 506 F.3d 874, 879 (9th Cir. 2007).

We address in turn each of the Retirees' arguments that TWU engaged in such arbitrary, discriminatory, and bad faith conduct.[2]

1

Was the Union's action arbitrary? Retirees contend that TWU made a wholly irrational decision when it withheld the bulk of the equity from any member who participated in Early Separation. They claim that the Union's decision was wholly irrational because the contractual concessions exchanged for the equity affected their rights just as much, if not more, than members who chose to stay on at American. The distribution plan, they argue, amounts to a large-scale grievance-trading scheme because they gave up the same contractual concessions as other workers but received no equity in return.

---

[2] We review a district court's decision to dismiss a duty of fair representation claim de novo. *McNamara-Blad v. Ass'n of Prof'l Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir. 2002); *see also Addington v. US Airline Pilots Ass'n*, 791 F.3d 967, 982 (9th Cir. 2015) ("Whether a union's conduct amounted to a breach of its duty of fair representation presents a mixed question of law and fact that we review de novo.").

We have held that a union's conduct generally is not arbitrary when the union exercises its judgment. *See, e.g.*, *Beck*, 506 F.3d at 879; *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985) ("In all in cases in which we found a breach of the duty of fair representation based on a union's arbitrary conduct . . . the act in question did not require the exercise of judgment . . . ."). Therefore, our threshold inquiry in assessing any duty of fair representation claim must be to determine whether the alleged conduct involved judgment or whether such conduct was merely ministerial or procedural in nature. *Burkevich v. Air Line Pilots Ass'n, Int'l*, 894 F.2d 346, 349 (9th Cir. 1990). If the challenged conduct involves "the union's judgment, then 'the plaintiff[s] may prevail only if the union's conduct was discriminatory or in bad faith.'" *Id.* (quoting *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th Cir. 1988)).

When a union exercises its judgment, its action "can be classified as arbitrary 'only when it is irrational, when it is without a rational basis or explanation.'" *Beck*, 506 F.3d at 879 (quoting *Marquez*, 525 U.S. at 46). *See also Addington*, 791 F.3d at 983–84. Indeed, under this "highly deferential" standard, union conduct will only be deemed arbitrary if it is "so far outside [the] 'wide range of reasonableness,' *Ford Motor Co. v. Huffman*, 345 U.S. [330,] 338 [(1953)], that it is wholly 'irrational.'" *Air Line Pilots Ass'n, Int'l, v. O'Neill*, 499 U.S. 65, 78 (1991) (partial citation omitted). Typically, if the challenged conduct involves "the union's judgment, then 'the plaintiff[s] may prevail only if the union's conduct was discriminatory or in bad faith.'" *Burkevich*, 894 F.2d at 349 (quoting *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th Cir. 1988)).

Retirees do not plead that TWU distributed the contested equity through a ministerial or procedural act. Rather, they contend that TWU went through a deliberative decision-making process when it settled grievances and contractual disputes in exchange for the equity. Such process utilized input from committees, experts, and membership. Specifically, Retirees allege that TWU created a committee to develop the equity distribution plan, that TWU retained a financial and economic advisor to help the committee create such plan, that the final plan was presented to TWU membership across the country, and that member feedback was heard by TWU leadership. TWU approved of the final distribution plan through successive votes in both the committee charged with creating the distribution methodology and the union's governing council. This accords with the district court's finding, based on the pleadings, that TWU gave careful consideration to its distribution plan.

Because the union is alleged to have exercised its judgment, Retirees can prevail only if such conduct was "wholly irrational" such that it violated the duty of fair representation. *Beck*, 506 F.3d at 880 (observing that "we cannot deem a union's exercises of judgment to be wholly irrational and thus arbitrary"). Considering that Retirees chose to receive substantial Early Separation payments at a time when it was uncertain what the ultimate value of the equity would be, we cannot say that the union's subsequent decision to exclude them from the equity was "wholly irrational." Therefore, we are satisfied that the district court did not err when it held that TWU's equity distribution scheme was not arbitrary.

2

Was the Union's action discriminatory? Where challenged union conduct involves the exercise of judgment, such conduct can still violate the duty of fair representation if we find it discriminatory or done in bad faith. *Id*. Retirees argue that TWU discriminated against them because of their lack of political power: in order to fend off raids by rival unions, they claim that TWU maximized equity distributions to voting members by withholding equity from members who chose to leave American through the Early Separation program. Retirees claim that TWU chose to discriminate against them because other members would possess more political power in any upcoming representation elections.

Unions have a duty not to discriminate impermissibly among their members, but there is certainly "no requirement that unions treat their members identically as long as their actions are related to legitimate union objectives." *Vaughn v. Air Line Pilots Ass'n*, *Int'l*, 604 F.3d 703, 712 (2d Cir. 2010). A union's decision to discriminate against its members on an impermissible basis will violate the duty of fair representation only where the aggrieved members set forth "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971).

We have previously held that unions cannot discriminate against their members based on political animus or even political expediency. *Addington*, 791 F.3d at 984–85. That is to say, unions cannot make decisions solely "to advance one group of employees over another." *Id*. at 984 (quoting

*Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524, 1535 (7th Cir. 1992)).

But Retirees pleadings lack facts from which we can plausibly infer that TWU discriminated against them on the basis of raw political power. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (holding that allegations are not plausible unless plaintiffs allege "facts tending to exclude the possibility that the [defendant's] explanation is true."). TWU's distribution plan benefitted members who died during the bankruptcy, members who were unable to work due to on-the-job injuries, and members who were on leaves of absence for disability, military deployment, or who were absent under the Family and Medical Leave Act. Such members would not be able to vote in any upcoming representation elections, yet TWU distributed equity to them regardless of their political value.

And absent from Retirees' allegations are any overt indications of political animus. *See Addington*, 791 F.3d at 985 (finding conduct discriminatory where the union advocated for the challenged policies "as a way of suppressing the minority" members). Retirees have not directed us to any statements showing animus towards them by TWU leadership or the committee responsible for drafting the equity plan.

Moreover, we cannot infer an intent to discriminate based solely on the equity distribution plan in and of itself because such distribution should be read in the complete context of the bankruptcy settlement process. Retirees certainly pled sufficient facts indicating that the concessions won by American would affect their future economic well-being: along with other TWU members, Retirees lost the ability to

accrue additional pension benefits as well as thousands of dollars in medical benefits during each year of retirement. But Retirees own pleadings demonstrate that TWU achieved substantial raises for all members and new 401k benefits in exchange for such concessions. Critically, TWU also negotiated for cash payments for Retirees, all of whom who opted to leave American voluntarily through the Early Separation program rather than labor under the new collective bargaining agreement ratified in 2012.

TWU could permissibly make decisions about the equity against the backdrop of the broader bankruptcy settlement without creating the inference that such actions were motivated by political machinations. Even under normal economic conditions, TWU would have no obligation to treat all of its members the same, but "[t]his proposition is especially true in the context of employer bankruptcy, which can present unique challenges for a bargaining representative." *Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 393 (6th Cir. 2012). Distributing equity to members who did not already take advantage of the lump-sum cash payments offered through the Early Separation program does not, without more, allow an inference of political discrimination on the part of TWU.

Based on the facts alleged by Retirees and attested to in documents attached to their complaint, we hold that the district court did not err when it found that allegations of discrimination were implausible.

3

Did the Union act in bad faith? Retirees' bad faith allegation has two parts: first, they claim that the TWU

intentionally delayed disclosing the equity distribution plan until after the deadline for choosing Early Separation; second, they claim that TWU manipulated internal decision-making procedures to ensure that equity went only to active members.

Both prongs of Retirees' argument center around a letter sent to TWU members by the union's leadership in September of 2012. The letter assures membership that "this asset [the equity] belongs to you and will be distributed to you." The letter goes on to say that TWU "will provide details on distribution over the next few weeks." Retirees argue that such communication created a duty to distribute an equity distribution plan quickly so that members contemplating Early Separation would know how such choice might affect their stake in the equity. Likewise, they claim that TWU broke faith with its members when it assured Retirees that the equity belonged to them only to pull the rug out in the final distribution plan.

To state a plausible claim that TWU breached its duty of fair representation through bad-faith conduct, Retirees must plead facts that, if true, show "substantial evidence of fraud, deceitful action or dishonest conduct." *Beck*, 506 F.3d at 880 (quoting *Lockridge*, 403 U.S. at 299). Unions owe their members "complete good faith and honesty." *United Bhd. of Carpenters and Joiners of Am. v. Metal Trades Dep't, AFL-CIO*, 770 F.3d 846, 848 (9th Cir. 2014) (quoting *Vaca*, 386 U.S. at 177). Even so, mere negligence and erroneous judgment calls cannot, by themselves, support an inference of bad faith. *Stevens v. Moore Bus. Forms, Inc.*, 18 F.3d 1443, 1447–48 (9th Cir. 1994) ("[A]n error in judgment by the union does not constitute bad faith.").

Regarding Retirees' first allegation of bad faith—that TWU either deliberately misled members regarding the equity or, at the very least, deliberately delayed disclosing the distribution criteria—we find such claims implausible. Retirees have not alleged that TWU had already formed its plan for the equity before the October 2012 deadline for choosing Early Separation. Rather, Retirees allege that TWU did not even form the committee responsible for creating distribution plans until after the deadline for choosing Early Separation had passed.

Such allegations are inconsistent with a nefarious, bad-faith effort to delay the formation of a distribution plan: the committee presumably responsible for such scheme had not even been formed when the allegedly bad-faith acts took place. Even assuming that TWU's September 2012 letter to membership created a duty to create a plan for the equity within the communicated timeframe, Retirees pleadings can at most support the inference that TWU's failure to perform such duty constituted negligence. And negligent union conduct does not rise to the level of bad faith. *Peterson*, 771 F.2d at 1259 (reiterating that "negligence is insufficient to support a breach of the duty of fair representation suit against a union").

Similarly, allegedly misleading statements made by TWU officials at various Locals during September of 2012 cannot support an inference of bad faith. TWU disclosed the risks of taking advantage of the Early Separation program in the letter sent to its members that same month. After assuring membership that the equity would be distributed to them in due course, TWU explicitly told those contemplating Early Separation that "the equity piece is very much undetermined

at this point" and that it could not say, one way or another, what role the equity should play in retirement planning.

And in a portion of the same letter titled "Who Will Receive the Value of the Equity and In What form will it be distributed?" TWU told its members that it would make decisions about distributing the equity after the union understood the worth of such equity and the form it would take. TWU explicitly told its members—including Retirees—that one of the variables it would consider in distributing the equity was the "active status" of members. Against the backdrop of such communication, informal statements made during various Local meetings simply cannot provide a basis for an inference that TWU engaged in "fraud, deceitful action or dishonest conduct." *Lockridge*, 403 U.S. at 299 (quoting *Humphrey v. Moore*, 375 U.S. 335, 348 (1964)).

Finally, we agree with Retirees that a union's decision to buck its own internal procedures may, in some circumstances, support an inference of bad faith. *See United Bhd. of Carpenters*, 770 F.3d at 852. Here, however, Retirees have failed to put before us any internal rule or policy that TWU violated during the equity distribution process.

### III

The district court did not err when it dismissed Retirees' allegations that TWU violated its duty of fair representation through conduct that was arbitrary, discriminatory, or done in bad faith.

**AFFIRMED.**